Michael Wesley JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–88–00288–CR.

Court of Appeals of Texas, Dallas.

June 5, 1989.

John H. Hagler, Dallas, for appellant.

Donald G. Davis, Dallas, for appellee.

Before McCLUNG, STEWART and BAKER, JJ.

BAKER, Justice.

A jury convicted Michael Wesley Jones of murder, set his punishment at fifty years' confinement, and assessed a $10,-000.00 fine. In this appeal, he asserts four points of error, contending that (1) the trial court erred in failing to suppress the in-court identification of an eyewitness; (2) the evidence is insufficient to support a conviction; (3) the trial court erred in admitting a hearsay statement; and (4) the trial court erred in failing to grant his motion for new trial based upon jury misconduct. We find no merit in these points and affirm the trial court's judgment.

In his first point of error, appellant contends that the trial court erred in failing to suppress the in-court identification by an eyewitness to the murder. Marty Barnes, the State's key witness, testified that she was seated in a car on the night of July 16, 1987, with a friend named Amelia Henderson. Barnes testified that she saw the murder victim walking towards her and then saw a light blue Cadillac Seville drive up by the victim and saw the driver of the car get out and begin hitting the victim. She saw the driver of the car kick the woman and then saw him pull out a gun and shoot at her three times. The assailant then got back into the car and left the scene. As the car was leaving, Barnes obtained the license number which she gave to the investigating officers. She also gave a general description of the man she saw commit the murder.

The police checked the car registration and learned that appellant was the owner. On the evening following the murder, an officer went to appellant's residence and questioned him regarding the shooting. Appellant went to the police station and told an officer that only he and his wife had keys to the car and that no one else had driven the car on the night of the shooting. Appellant was subsequently arrested and charged with the murder. Appellant's defense was that he had been playing basketball at various parks and that he went home shortly after 9:00 p.m. and remained there the rest of the evening. He also stated that he did not know the murder victim. Appellant's wife testified that he was at home the night of the shooting.

The day after the shooting, Barnes was shown a photographic array. From the array of six photographs, she picked out two—one of appellant and the other of an unknown individual. She testified at a pre-

trial hearing that in order to be absolutely sure, she requested a live lineup. This was conducted at a later date, and Barnes identified appellant, who was one of the persons in the live lineup. However, the second person whose photograph she had previously identified was not in the lineup.

Appellant urges that the in-court identification was tainted by the photographic and live lineup procedures. He asserts that the photographic array reveals that his photograph was dissimilar to the others that appeared in the array. He further asserts that the in-court identification was tainted by the fact that the unknown individual whose photograph was also picked was not placed in the live lineup. Appellant concludes that the identification testimony by Barnes at trial was not of an independent origin but was the product of a suggestive photographic array and live lineup.

■ A case such as this must be considered on its own facts, and convictions based on identification at trial following pretrial identification by photograph or lineup will be set aside only if the photographic or lineup identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *See Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Coleman v. State,* 505 S.W.2d 878, 880 (Tex.Crim.App.1974). The rule is that a witness's in-court identification which is independent of any pretrial identification procedures is admissible. *See Thompson v. State,* 480 S.W.2d 624, 627 (Tex.Crim.App. 1972). Under *Thompson,* the following factors are used in determining the origin of an in-court identification:

(1) the prior opportunity to observe the alleged criminal act;

(2) the existence of any discrepancy between any pre-lineup description and the defendant's actual description;

(3) any identification prior to lineup of another person;

(4) the identification by picture of the defendant prior to the lineup;

(5) failure to identify the defendant on a prior occasion; and

(6) the lapse of time between the alleged act and the lineup identification.

*Thompson,* 480 S.W.2d at 627; *see also Turner v. State,* 614 S.W.2d 144, 146 (Tex. Crim.App.1981).

■ Here, the record reflects that Barnes saw appellant for a period of five to seven minutes during the time of the beating and shooting. During this time, she saw appellant in various profiles and also face to face. She testified that she saw appellant's face clearly. She was from fifteen to twenty-five feet away, and the lighting in the area was bright enough to allow a person to "read a newspaper." The record reflects little if any discrepancy between the witness's description of appellant to the police and his actual description. This description was prior to the photographic and live lineups. At the time of the photographic lineup, she did identify two separate photographs, but one of these was the appellant. She testified that she selected the second photograph out of an abundance of caution, and the second photograph was selected after she had already identified appellant. At the time of the live lineup, she immediately identified appellant. She did not fail to identify appellant on either of these two occasions. The photographic lineup was the day after the shooting, and the live lineup was thirteen days after the shooting.

During the trial, Barnes repeatedly asserted that her in-court identification was based solely on having seen the appellant at the time of the murder. We conclude that the facts and circumstances are sufficient to establish the independent origin of the witness's identification of appellant. We hold that the identification procedures were not so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparable misidentification. *See Turner v. State,* 614 S.W.2d at 146; *Jackson v. State,* 628 S.W.2d 446, 448 (Tex. Crim.App.1982). We overrule appellant's first point of error.

■ In his second point of error, appellant contends that the evidence is insufficient to support the conviction. He urges

that since he has contended that the in-court identification of the eyewitness was tainted, the identification cannot be used in support of the conviction. This argument fails not only because we have held the identification testimony admissible, but also because appellant's legal premise is without merit. When reviewing the evidence on an insufficiency assertion, the reviewing court is required to consider all of the evidence, even that which may have been improperly admitted. *See Osban v. State*, 726 S.W.2d 107, 111–12 (Tex.Crim. App.1986); *Collins v. State*, 602 S.W.2d 537, 540 (Tex.Crim.App.1980) (op. on reh'g) (Roberts, J., concurring); *see also Lockhart v. Nelson*, — U.S. —, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).

◾ Appellant argues that the State's only eyewitness testified she viewed the gunman's face for a short period of time with the aid of a streetlight. She also provided the police with a license plate number that matched the appellant's license plate. He contends, however, that no shell casings or other physical evidence was found at the scene to connect him with the offense, and no handgun was found at his house. He argues that there was no evidence showing a relationship between appellant and the murder victim. When the sufficiency of evidence is raised as a point of error, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Beardsley v. State*, 738 S.W.2d 681, 683 (Tex.Crim.App.1987).

The record reflects that an eyewitness clearly saw appellant get out of his car, beat and shoot the victim, get back in his car, and drive away. The eyewitness positively identified appellant as the perpetrator. The car was identified as belonging to appellant. We note that appellant's defense was an alibi. Questions concerning the credibility of the witnesses and the weight to be given their testimony are to be resolved by the trier of the fact. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim.App.1984), *cert. denied*, 474 U.S. 865,

106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The trier of fact is free to accept or reject all or a portion of the testimony of any witness. *Benjamin v. State*, 621 S.W.2d 617, 618 (Tex.Crim.App.1981). The evidence, when viewed in the light most favorable to the verdict, is such that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We overrule appellant's second point of error.

◾ In his third point of error, appellant contends that the trial court erred in admitting the hearsay statements made by a witness who did not testify during the trial. There was a second witness to the shooting. This person, Amelia Henderson, was in the car with Barnes and also observed the shooting. This witness was unavailable to testify at the time of the trial, but her testimony was offered through one of the investigating officers. A hearing outside the presence of the jury was conducted. The officer testified that he talked with Henderson after the shooting, and she provided him with the license plate number of the car and a physical description of the gunman. The officer stated that such statements were made to him by Henderson approximately thirty to forty-five minutes after the shooting. The officer also testified that at the time the witness made these statements, she was emotionally upset, trembling, scared, nervous or afraid, shaking, and excited. Appellant objected to the testimony as hearsay. The State argued that the testimony was admissible as res gestae. The trial court overruled the objection, and the officer was permitted to testify to the same facts before the jury.

Appellant argues that because of the lapse of time and because the witness's statements were made in response to specific questions by an officer, the witness's testimony did not qualify as a spontaneous declaration or as part of the res gestae and that it was therefore error to admit the testimony. We disagree.

The general rule is that no single, rigid principle governs the admissibility of evidence under the excited utterance or spon-

taneous declaration rule. On the contrary, in determining what acts or declarations are part of the res gestae, so as to be admissible under the rule, each case must be considered on its own particular facts. *Fisk v. State,* 432 S.W.2d 912, 914 (Tex. Crim.App.1968). The element of time is an important factor to take into consideration, but it is not the controlling factor. The paramount factor, upon which time has an important influence, is whether the person who made the statement or declaration is still dominated at the time by emotions instigated by the happening of the principal act or event. *Fisk,* 432 S.W.2d at 914–15. If the statements are made while the witness is in the grip of emotion, excitement, fear, or pain, and they relate to the exciting event, they are admissible even after an appreciable time has elapsed between the exciting event and the making of the statement. *See Penry v. State,* 691 S.W.2d 636, 647 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986). The fact that such statements were made in response to questions by the investigating officer does not make such testimony inadmissible. *See Morris v. State,* 157 Tex.Crim. 14, 246 S.W.2d 184, 186 (1951).

Here, the evidence clearly indicates that the witness was still under the emotional effects of the viewing of the beating and shooting. There was no long lapse of time between the shooting and her conversation with the investigating officer. We hold that the statements of the witness Henderson to the investigating officer were admissible as excited utterances. *See* TEX.R.CRIM.EVID. 803(2); *King v. State,* 631 S.W.2d 486, 491 (Tex.Crim.App.), *cert. denied,* 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982). We overrule point number three.

Appellant's last point of error is that the trial court abused its discretion in refusing to grant his motion for new trial on the ground of jury misconduct. In his motion, appellant alleged that during deliberations the jury received other evidence when one of the jurors, Mike Perez, reported to the jury that he had visited the scene of the crime and stated that there was enough

light for the eyewitness, Barnes to identify appellant. This motion was supported by the affidavit of another juror, Betty Jean Hooker. She stated in this affidavit that she did not feel that there was sufficient light at the crime scene for the eyewitness to identify appellant. She asserted that when she voiced this opinion, juror Perez then said that he had personally visited the scene, and there was enough light to identify appellant. Her affidavit further stated that the juror Perez "time and time again" reassured the jury panel during the hours of deliberation that he went to the scene and that his investigation revealed that there was enough light to make identification of the defendant. She also stated that what Perez said caused her to change her mind from not guilty to guilty.

Upon the hearing, five of the jurors, including Hooker and Perez, testified. During direct examination by appellant's counsel, the juror Hooker basically repeated the statements in her affidavit except that she testified that Perez made the statement about lighting at the scene only one time rather than numerous times. In response to the State's cross-examination, juror Hooker acknowledged that during the course of the trial six witnesses testified that there was sufficient light at the scene for identification and that there were a number of pictures introduced into evidence reflecting the number of mercury lights at the scene of the shooting. She acknowledged that what the juror Perez said was nothing new from what had been previously admitted into evidence.

The juror Perez testified and acknowledged that he had driven by the scene of the crime during daylight hours. However, he testified that he said that there were plenty of mercury lights around the building. He further testified that what he said confirmed the testimony and evidence already in the record. In response to questions from the court, juror Perez reiterated that what he said was that the photographs in the record correctly portrayed the area. Juror Mark Alman testified that although he heard Perez mention going to the scene of the crime, Perez did not mention any-

thing about the lighting. Alman said that as soon as he heard Perez say he had been to the scene, he told Perez that the jury was not to consider that.

Two other jurors including the presiding juror testified. Testimony established that when Perez made the statement, the presiding juror immediately admonished him not to discuss the matter further because it was speculation, that the remark was not taken very seriously, and that there was not much comment about it by the other jurors. These other jurors also testified that in their opinion the lighting issue was not a major factor because there were six persons who testified that the lighting was adequate, and the only person who questioned the lighting during the trial was the defense lawyer who was not present at the scene. In addition to the presiding juror, at least two other jurors testified that they, upon hearing Perez's statement, admonished him that it was speculation, that it had nothing to do with the case and should not be considered, and that it was the last time that situation was discussed. The testimony of the jurors other than Hooker also established that she did not express any major concerns over the lighting issue during deliberations and that her main concern was her theory that the witness Barnes and the missing witness Henderson had conspired to frame the appellant for the murder. Following the testimony of these jurors, the trial court overruled appellant's motion for new trial.

In order for a new trial to be granted because the jury received other evidence during deliberations, a two-pronged test must be satisfied: (1) the evidence must be received by the jury, and (2) it must be detrimental to the defendant. *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex.Crim. App.1978). In *Stephenson*, the Court of Criminal Appeals warned against an overly broad application of the statute. If there is conflicting evidence on the issue of whether the jury received the evidence, a fact question is presented, and the trial court's determination of the question will be overturned on appeal only if an abuse of discretion is shown. *See Honeycutt v. State*, 157

Tex.Crim. 206, 248 S.W.2d 124, 125 (1952). The question of whether the jury has received other evidence may also be a question of degree. *See Stephenson*, 571 S.W.2d at 176.

The record in this case reflects that there was both a question of fact and a question of degree regarding receipt of other evidence. The testimony indicated that the statement was made in passing by the juror Perez and was not discussed further and was accorded little or no significance by the other jurors. Also, at least three jurors admonished Perez and promptly suppressed his remarks and testified that his remark was not discussed or considered any further. All jurors who testified controverted Hooker's testimony and affirmatively stated that lighting was not her major concern. Finally, the comment made by Perez was with reference to testimony and evidence already in the record.

Under the record, the trial court was authorized to conclude that no new fact, harmful to appellant, was imparted to the jury by the remark. We find that no abuse of discretion is shown. *See Stephenson*, 571 S.W.2d at 176; *Broussard v. State*, 505 S.W.2d 282, 285 (Tex.Crim.App.1974); *McLane v. State*, 379 S.W.2d 339, 342 (Tex. Crim.App.1964); *Honeycutt*, 248 S.W.2d at 125. We overrule appellant's fourth point of error.

The trial court's judgment is affirmed.