CR6-356.RODRIGUEZ 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00356-CR







Salvadore Rodriguez, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 45,952, HONORABLE JOE CARROLL, JUDGE PRESIDING







PER CURIAM



 A jury found appellant Salvadore Rodriguez guilty of murder and the trial court assessed
punishment at fifty years imprisonment. Appellant raises five points of error. Appellant contends that the
trial court erred by (1) overruling his motion to suppress evidence, (2) overruling his objections to
statements made by the victim, (3) overruling his objections to hearsay testimony, (4) denying his request
to admit as evidence his confession to police at the punishment phase of trial, and (5) ruling during the
punishment phase that he failed to raise the issue of sudden passion. We will affirm the judgment of
conviction.



FACTS


 On September 23, 1995, while inside her apartment, Gloria Sanchez heard strange noises
outside. She went downstairs carrying a large stick. She saw her husband, Jesus Sanchez, lying on the
ground. Three men were standing around her injured husband. She approached the three men and hit one
man across his back with her stick. The three men fled. Sanchez helped her husband to the door and then
went to a neighbor's house to call police. Jesus Sanchez was helped up the stairs by his daughter and
began cleaning his wounds in the bathroom sink. 

 About fifteen minutes later, Temple police officer Jeffrey Clark arrived at the scene along
with other police officers. Clark first saw Jesus Sanchez as he was walking out of the bathroom. Clark
explained that Sanchez started to say something to him and then collapsed into Clark's arms. Clark noticed
a large amount of blood on Sanchez's pants and immediately called for an ambulance. Clark, who before
becoming a police officer was employed as an emergency medical technician, determined that Sanchez's
injuries were very severe and he feared that Sanchez was in danger of dying. Clark ripped Sanchez's left
pant leg and began to attend to a large gaping laceration. Sanchez spoke to Clark for a brief time. Clark
also spoke with Gloria Sanchez and through his investigation learned that appellant and two other males
were suspects. Jesus Sanchez died from complications associated with the injuries he suffered that night.



MOTION TO SUPPRESS


 By point of error one, appellant contends that the trial court erred by overruling his motion
to suppress a pair of bloody jeans and a t-shirt seized from Rodney Drews's trailer. At the suppression
hearing, Temple police officer Derek Rose testified that he was on duty when he heard the police dispatch
responding to the Sanchez assault. In the dispatch, Clark reported that the suspects fled the scene and
gave a description of the vehicle in which they fled, the number of suspects, and the suspects' names and
addresses. Rose called Clark on the radio and Clark gave him a description of the suspects' clothing. 
Clark stated that one of the suspects was wearing a white t-shirt with a particular design on the front and
blue jeans. The dispatcher reported the suspects' address at a trailer park. 

 Rose and several other officers arrived at the trailer park about the same time. The officers
surrounded the trailer and secured the exits. Rose determined that because it was about 2:00 a.m. and the
suspects had fled the scene of a felony offense, he would not have enough time to procure an arrest
warrant. Rose observed two men inside the trailer move to the back, or north end, of the trailer. He
thought that the two men were about to flee. Rose knocked on the front door accompanied by Officer
Sheen. Rodney Drews answered the door. Rose asked him if the trailer belonged to him and he
responded, "Yes." When Rose asked Drews if appellant was in the trailer, Drews responded that he was
at a bar. As Rose was talking with Drews, appellant walked into the room from the north bedroom of the
trailer wearing only white boxer shorts. Rose noticed that he had "Rodriguez" tattooed across his stomach. 
Rose recognized appellant as one of the two men he had seen moving inside the trailer. Rose noticed that
previously appellant was shirtless but had on blue jeans that were unbuttoned at the waist.

 Rose asked appellant to step outside. He refused. Rose and appellant continued to talk
for a few more minutes and then appellant stepped outside and Rose checked him for weapons. Appellant
then wanted to go back inside the trailer and get dressed. Rose asked Drews if he minded if the officers
came inside. Drews said that he did not mind. Rose thought that he might find in the bedroom the blue
jeans he had seen appellant wearing. Rose asked Drews if he could go to the north bedroom and look
around. Drews said he did not mind. Rose told appellant to wait in the living room. Rose initially found
no discarded clothing in the bedroom, but noted that there were several large bags packed full of neatly
folded clothes.

 Appellant became insistent that he be allowed to get dressed. Appellant asked his girlfriend
or common-law wife, Leticia Ruiz, to go back into the bedroom and get a pair of his shorts that were
located on the bedroom floor. Ruiz went to the bedroom, which she told Rose she shared with appellant. 
Rose then asked Ruiz if she would mind if he continued to look about the room. Ruiz said that she did not
mind. As Ruiz continued to look for a pair of shorts for appellant, Rose lifted the mattress, and saw a pair
of blue jeans with fresh blood spots on them. Returning to the living room with the bloodied blue jeans,
Rose noticed a crumpled white t-shirt on top of a chair. Rose saw that the shirt had several spots of blood
on it. The white t-shirt had a large design on the front as described in Clark's radio dispatch. The officers
arrested appellant. 

 Drews testified at the suppression hearing that when the two officers came to his trailer
looking for appellant, he did not know that appellant was there. As he was talking to the officers, appellant
walked in. The police forcibly entered the trailer without asking his permission and immediately arrested
appellant. According to Drews, after appellant was arrested he asked Ruiz to get him some clothes. The
officers and Ruiz went to the north bedroom. When they returned to the living room, they had some clothes
and Ruiz was handcuffed. Drews stated that no one lived in the bedroom where the bloody blue jeans
were found. Drews explained that occasionally Ruiz and Rodriguez stayed in the bedroom when they
dropped by. Drews had no idea where the two were planning to spend the night. Drews stated that the
blue jeans seized were not his. 

 Ruiz testified that she was appellant's common-law wife. She had been staying at the trailer
for several weeks and appellant stayed in the room with her. This portion of her testimony was impeached
by her prior statement to police that she had not been with appellant lately and that she had moved to
Drews's trailer after she and appellant had broken up. She said that the officers asked her to get clothes
for appellant. She said that she did not give the officers permission to go back into the bedroom and that
she did not hear anyone else give the officers permission to go into the bedroom. 

 To sustain a warrantless search on the basis of consent, the State must prove, by clear and
convincing evidence, that consent to the search was freely and voluntarily given. Dubose v. State, 915
S.W.2d 493, 496 (Tex. Crim. App. 1996). For consent to be voluntary, it must not be the product of
duress or coercion, actual or implied. Id. Whether the consent to search was in fact voluntary or the
product of duress or coercion, expressed or implied, is a question of fact to be determined from the totality
of circumstances. Id. 

 At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of
the credibility of the witnesses, as well as the weight to be given their testimony. Id. The trial judge is also
the initial arbiter of the legal significance of the facts. Id. The court of appeals views the evidence
presented at the suppression hearing in a light most favorable to the trial court's ruling. Daniels v. State,
718 S.W.2d 702, 704 (Tex. Crim. App.), cert. denied, 479 U.S. 885 (1986). The court of appeals must
limit its review of the trial court's rulings, both regarding the facts and legal significance of the facts, to a
determination of whether the trial court abused its discretion. Dubose, 915 S.W.2d at 496. Even if the
court of appeals would have reached a different result, as long as the trial court's rulings are at least within
the "zone of reasonable disagreement," the appellate court should not intercede. Id. 

 There were many contradictions in the testimony presented at the suppression hearing. The
trial court believed the testimony of Officer Rose that Drews and Ruiz gave their consent to enter the trailer
and to search the north bedroom. This testimony also supports the conclusion that their consent was
voluntary and not the product of coercion. We conclude that the trial court did not abuse its discretion by
overruling the motion to suppress. We overrule point of error one.



ADMISSION OF VICTIM'S STATEMENTS


 By point of error two, appellant contends that the trial court erred by overruling his
objection to Officer Clark's testimony relating statements Jesus Sanchez made to him before he died. The
admissibility of out-of-court statements under the exceptions to the hearsay rule is within the trial court's
discretion. Lawton v. State, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995). 

 The trial court held a hearing outside of the jury's presence to determine the admissibility
of Sanchez's statements to Clark. At the hearing, Clark testified that upon arriving at the Sanchez home
about fifteen minutes after the assault, Sanchez collapsed in his arms and appeared to be in extreme pain. 
Clark was concerned about whether Sanchez would live. Clark asked Sanchez what happened. Sanchez
told Clark that two unknown white men approached him and held him down in the alley, and that appellant
beat him with a tire iron. Sanchez told Clark that he had known appellant for at least a year and that he
had filed a complaint on appellant about a month before for killing his dog. Sanchez believed that his filing
the complaint prompted appellant's assault. 

 Appellant objected that Clark's testimony was hearsay. The State contended that
Sanchez's response to Clark's question was an excited utterance describing his impression of the events
while he was still undergoing trauma. Appellant responded that the statement was made more than fifteen
minutes after the startling event and was made in direct response to a question. An excited
utterance is a statement relating to a startling event or condition made while the declarant was under the
stress of excitement caused by the event or condition. Tex. R. Crim. Evid. 803(2). The critical factor in
determining when a statement is an excited utterance is whether the declarant was still dominated by the
emotions, excitement, fear, or pain of the event. McFarland v. State, 845 S.W.2d 824, 846 (Tex. Crim.
App. 1992). While the period of time that lapsed between the occurrence of the startling event and the
making of the statement is a factor to consider in determining the admissibility of such statements, the critical
factor is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event. 
Id. The fact that some of the declarant's statements were in the form of responses to questions does not
make them inadmissible under this exception to the hearsay rule. Jones v. State, 772 S.W.2d 551, 555
(Tex. App.--Dallas 1989, pet. ref'd). 

 Clark arrived only fifteen minutes after Sanchez was attacked by several men. Sanchez
was suffering from severe wounds, was in pain, and had collapsed in Clark's arms. The record supports
the trial court's decision to admit Sanchez's statements to Clark. The trial court did not abuse its discretion
by overruling appellant's hearsay objection. We overrule appellant's second point of error. 



OTHER HEARSAY OBJECTIONS


 By point of error three, appellant complains of other instances when the trial court abused
its discretion by overruling his hearsay objections. Appellant contends that, based upon the record as a
whole and in light of the repeated error, the admission of the hearsay testimony was not harmless beyond
a reasonable doubt. 

 The following occurred during Clark's testimony:



Clark: When I arrived on the scene, I was met at the front door by a female later identified
as Gloria Sanchez. She advised me that her husband, Jesus Sanchez, had been assaulted.


Defense Counsel: I object to any hearsay, Your Honor.


State's Counsel: We are not offering it for the truth, Your Honor, right at this point. We
are just offering it for what the officer saw when he got there for his state of mind. 


The Court: All right. I will overrule.



 Appellant argues that Clark's testimony was offered for the truth of the statements and was
hearsay. However, at trial, when the State asserted that it was not offering the testimony for its truth,
appellant did not contest the assertion or object to the State's explanation. Moreover, the fact that Sanchez
had been assaulted was undisputed and any error in the admission of this statement was harmless.

 Appellant complains that Rose was erroneously allowed to testify to hearsay statements
made by Rodney Drews. 



State's Counsel: Okay. So what happened when you talked to [Drews]?


Officer Rose: Okay. After I talked to him or he answered the door, I asked him if
[appellant] was there. He said that --


Defense Counsel: Objection. Hearsay.


The Court: I will overrule.


Officer Rose: He said that [appellant] had gone out drinking and didn't know when he
would be back.



The State did not offer this testimony to show that appellant was actually out drinking. Subsequent
testimony showed that, in fact, Drews was lying and appellant was inside the trailer. Error, if any, was
harmless in light of this testimony. 

 Appellant also complains about Rose's testimony that Drews told him that he owned the
trailer. We note however, that Ruiz testified in response to defense questioning that Drews owned the
trailer. Because Rose's testimony was cumulative of other unobjected-to testimony, no error is presented.

 Appellant also complains that the trial court should not have allowed Rose to testify that
Ruiz told him that she could not find appellant's clothes in the north bedroom. The State contends that this
statement was not offered for the truth of the matter but to explain the circumstances under which Rose
asked for permission to search for appellant's clothes. In any event, Ruiz's statement about not finding
appellant's clothes was a collateral circumstance and did not relate to a contested matter. We overrule
appellant's third point of error.

PUNISHMENT PHASE


 By point four, appellant contends that the trial court erred during the punishment phase of
trial by denying his request to admit into evidence his confession to police. Appellant argues that his
confession was admissible as an exception to the hearsay rule under Texas Rule of Evidence 803(24) as
a statement against his interest. In his fifth and final point, appellant contends that the trial court erred by
failing to find that appellant caused Sanchez's death under the immediate influence of sudden passion. 

 At the punishment stage of a murder trial, a defendant may raise the issue of whether he
caused the death under the immediate influence of sudden passion arising from adequate cause. Tex. Penal
Code Ann. § 19.02(d) (West 1994). If a defendant proves the existence of sudden passion by a
preponderance of the evidence, the offense is a second degree felony. Id. 

 Appellant by his confession explained that he was angry and upset because Jesus Sanchez
was having an affair with appellant's girlfriend or common-law wife, Ruiz. While the confession and other
admitted evidence may show former provocation, the record does not reflect any provocative act by
Sanchez at the time of the offense. Appellant had been aware of the relationship between Ruiz and Sanchez
for some time. The evidence showed prior threats by appellant against Sanchez but nothing at the time of
the offense. The confession would have added nothing to the evidence presented. Error, if any, in denying
appellant's request to admit his confession was harmless. We overrule point of error four. Additionally,
neither the confession nor the evidence admitted showed that appellant caused Sanchez's death under the
immediate influence of sudden passion. We conclude that the trial court did not err by determining that
appellant failed to prove sudden passion. We overrule point of error five.



CONCLUSION


 Having addressed all of appellant's points of error, we affirm the judgment of conviction.


Before Justices Powers, Aboussie and Jones

Affirmed

Filed: February 6, 1997

Do Not Publish



statements
made by Rodney Drews. 



State's Counsel: Okay. So what happened when you talked to [Drews]?


Officer Rose: Okay. After I talked to him or he answered the door, I asked him if
[appellant] was there. He said that --


Defense Counsel: Objection. Hearsay.


The Court: I will overrule.


Officer Rose: He said that [appellant] had gone out drinking and didn't know when he
would be back.



The State did not offer this testimony to show that appellant was actually out drinking. Subsequent
testimony showed that, in fact, Drews was lying and appellant was inside the trailer. Error, if any, was
harmless in light of this testimony. 

 Appellant also complains about Rose's testimony that Drews told him that he owned the
trailer. We note however, that Ruiz testified in response to defense questioning that Drews owned the
trailer. Because Rose's testimony was cumulative of other unobjected-to testimony, no error is presented.

 Appellant also complains that the trial court should not have allowed Rose to testify that
Ruiz told him that she could not find appellant's clothes in the north bedroom. The State contends that this
statement was not offered for the truth of the matter but to explain the circumstances under which Rose
asked for permission to search for appellant's clothes. In any event, Ruiz's statement about not finding
appellant's clothes was a collateral circumstance and did not relate to a contested matter. We overrule
appellant's third point of error.

PUNISHMENT PHASE


 By point four, appellant contends that the trial court erred during the punishment phase of
trial by denying his request to admit into evidence his confession to police. Appellant argues that his
confession was admissible as an exception to the hearsay rule under Texas Rule