Affirmed and Memorandum Opinion filed December 30, 2003















Affirmed and
Memorandum Opinion filed December 30, 2003.

 

 

In The

 

Fourteenth Court
of Appeals

____________

 

NO. 14-03-00013-CR

____________

 

KALISSIA KAY KENDIG, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

_________________________________________________

 

On Appeal from the 272nd District
Court

Brazos County, Texas

Trial Court
Cause No. 29400F-272

 

_________________________________________________

 

M E M O R A
N D U M   O P I N I O N

            Appellant was convicted by a jury of
forgery and the court assessed punishment at two years’ confinement in a state
jail facility, probated for five years.  See Tex.
Pen. Code Ann. § 32.21 (Vernon 2003).  Appellant challenges her conviction in five
issues on appeal.  We affirm.    








Background

            On October 29, 2001, Euleta Clay was at home in Conway, Arkansas, when two
individuals walked into her home uninvited. 
When they finally left, Clay found her checkbook,
$4,000 cash, her social security card, and a photo identification were
missing.  Approximately one week later,
appellant cashed one of Clay’s missing checks in College
 Station, Texas.  The check was made out to appellant for
$6,800, “Euleta M. Clay” appeared in the signature
line, and the memo line on the check indicated it was for school tuition.  

            Upon presentment of the check, the
teller, Angie Vincent, checked her computer to make sure the check was
valid.  A notation appeared on the
computer indicating two checks had a stop-payment on them.  Vincent testified she later learned the two
check numbers actually indicated a range of checks, not just two, and the check
passed by appellant was included in that range. 

            Appellant claims she did not know
the check was forged and that she cashed the check for her boyfriend, whose
identification had been stolen.  She was
told by her boyfriend, Jeremy Blaine, that his grandmother was sending him a
check and he had no way of cashing it. 
She also testified her boyfriend’s grandmother had included some extra
money to help her with school.  Appellant
claimed she did not see her boyfriend fill out the check and if she had known
it was forged, she never would have agreed to cash it. 

I.  Legal Sufficiency of the
Evidence

            Appellant’s
third point of error challenges the legal sufficiency of the evidence to
support the conviction of forgery. 
Specifically, appellant claims the evidence is legally insufficient to
establish the check was signed by an unauthorized person.[1]  When reviewing a legal sufficiency claim, we
review the evidence in a light most favorable to the verdict in order to
determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim.
App. 2000) (en banc).  Whether the
evidence is legally sufficient is determined as a matter of law; thus, if the
evidence is legally insufficient, the case should never have been submitted to
the jury.  Oldham v. State, 5 S.W.3d 840, 844 (Tex. App.—Houston [14th
Dist.] 2000, pet. ref’d).  The same standard applies regardless of
whether the state presents direct or circumstantial evidence.  Huntley v. State, 4 S.W.3d 813, 814 (Tex. App.—Houston [1st Dist.]
1999, pet. ref’d) (en banc).       

            In order to prove appellant
committed the offense of forgery, the prosecution was required to prove beyond
a reasonable doubt that appellant (1) with intent to defraud or harm another;
(2) passed; (3) a writing; (4) that purported to be the act of another; and (5)
that other person did not authorize the act. 
Williams v.
State, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985)
(en banc); Tex. Pen. Code Ann. § 32.21 (Vernon 2003).  Appellant now complains there is no evidence
to support the last element, lack of authority. 
Specifically, appellant claims there is no evidence (1) at the time the
check was written, the person who wrote the check had no authority to act for
the complaining witness; (2) the check passed by appellant was one of the
checks stolen from the house of the complaining witness; and (3) when stop
payment on the check was issued. 
Appellant argues the “State presented no direct evidence that Euleta Clay did not authorize the maker of [check number]
1580 to fill the check out.  All of the
evidence presented is circumstantial . . .”  Circumstantial evidence, however, may
still be legally sufficient to support a conviction.  See
Colburn v. State, 501 S.W.2d 680, 682 (Tex. Crim. App. 1973). 

            Viewing the record in a light most
favorable to the verdict, checks were stolen from Clay’s residence
approximately one week earlier.  Clay’s
daughter testified at trial that her mother did not authorize anybody to write
checks from her account.  The check was
in the range of checks included in the stop-payment order.  The signature on the check was not Clay’s
signature.  Appellant told Vincent the
check was from her grandmother, not her boyfriend’s grandmother as she
alleged.  Vincent testified she would
have remembered if appellant had mentioned anything about a boyfriend or his
grandmother.

            Detective Paul Price began
investigating the forgery upon receipt of a package from the bank containing,
in part, the check and the police report from the theft at Clay’s house.  Price obtained a warrant for appellant’s
arrest, but questioned her first.  Price
testified that appellant did not seem surprised to learn the check was
forged.  He also testified appellant
admitted she saw her boyfriend fill out the check, including the signature
line.  Price questioned appellant about
her relationship with Blaine and she
explained she could not remember everything about the one-week relationship
because the two were drinking for much of the week.  Although she denied how much she drank during
the relationship at trial, on cross examination, appellant admitted that it may
have been true.

            At first, appellant seemed eager to
help with the investigation and told Price she learned Blaine’s real
name was Tim Spivey and he was in a Harris County jail.  Price visited Spivey, but Spivey did not fit
the description given by appellant of her boyfriend.  Price tried to either meet with appellant or
make arrangements for her to view a photo line-up to identify Spivey, but,
despite promises to the contrary, she never came to look at the line-up.

            Viewing the evidence in a light most
favorable to the verdict, we find evidence sufficient to show Clay did not
authorize the check passed by appellant. 
The evidence is legally sufficient to support appellant’s conviction
because any rational finder of fact could have found the essential elements of
the offense beyond a reasonable doubt, including lack of authorization.  Therefore, we overrule appellant’s legal
sufficiency challenge.

II.  Factual
Sufficiency of the Evidence

            Appellant’s
fourth point of error challenges the factual sufficiency of the evidence on two
elements of the forgery conviction: (1) lack of authority and (2) intent to
harm or defraud another.  In conducting a
factual sufficiency review, we view all of the evidence in a neutral light,
without favoring either party.  Johnson, 23 S.W.3d at
6–7.  We will set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and manifestly unjust. 
Id.  We review
the evidence weighed by the jury that tends to support the element in dispute
and compare it to the evidence that tends to disprove that element.  Johnson,
23 S.W.3d at 7.  In so doing, we must give appropriate
deference to the jury findings in order to prevent intruding on the fact
finder’s role as the sole judge of the weight and credibility of the
evidence.  Id.  Therefore, unless the record clearly reveals
a different result is appropriate, we “must defer to the jury’s determination
concerning what weight to give contradictory testimonial evidence because
resolution often turns on an evaluation of credibility and demeanor.”  Id. at 8. 

            The evidence set out above is all
the evidence presented regarding lack of authority.  Viewing all the evidence in a neutral light,
we find there is factually sufficient evidence regarding lack of authority to
support the jury findings.  Thus, we conclude
the findings are not so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust.  

            With regard to lack of intent, the
only evidence contrary to that set out above in our legal sufficiency review
was presented by appellant’s own testimony. 
Appellant denied ever seeing anyone fill out the check.  Appellant also claims that because she signed
the check in the presence of the teller and presented her correct
identification in front of a video camera, she did not possess the requisite
intent to defraud.  However, giving her
true identity does not corroborate lack of intent because the check was made
out to appellant; therefore, the only way to cash the check would be for her to
identify herself properly as the individual on the check.[2]  Appellant also assisted, at least initially
with the investigation; however, participation alone does not prove lack of
intent.  

            Intent to defraud or harm may be
established by circumstantial evidence.  Williams v. State, 688
S.W.2d 486, 488 (Tex. Crim. App. 1985) (en banc).  The jury may believe or disbelieve any part
of a witness’ testimony.  Oldham, 5 S.W.3d
at 845.  In this case, the jury
chose to reject appellant’s testimony, and this court will not disturb a jury’s
credibility finding.[3]  See Jones v. State, 984 S.W.2d 254, 258 (Tex. Crim.
App. 1998) (en banc); Oldham, 5 S.W.3d at 845–46. 
Viewing all the evidence in the record, including evidence favorable to
appellant, we cannot say the proof of guilt is so greatly outweighed by
contrary proof as to make the finding of guilt clearly wrong and manifestly
unjust.  Johnson, 23 S.W.3d at 11.  Appellant’s fourth point of error is
overruled.

III. 
Excited Utterance

            In
her second point of error, appellant alleges the trial court erred in allowing
Kathy Crary to testify about the hearsay statements
of her mother, Euleta Clay.  During trial, appellant objected to the
admission of the statements on two grounds: hearsay and relevance.  The trial court overruled both objections and
admitted the statements under either the excited utterance exception or then
existing mental condition exception.[4]  We review the trial court’s admission or
exclusion of evidence under an abuse of discretion standard.  Green v. State, 934 S.W.2d 92, 101–02 (Tex. Crim.
App. 1996).  The trial court’s
decision will be upheld as long as it was within the zone of reasonable
disagreement.  Montgomery v. State, 810 S.W.2d 372, 380
(Tex. Crim. App. 1990) (en banc).  Since we find the trial court did not abuse
its discretion in admitting the statements under the excited utterance hearsay
exception, we overrule appellant’s second point of error.  

            An excited utterance is any
“statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the
event or condition.”  Tex. R. Evid.
803(2).  The
critical factor in determining if the statement is an excited utterance is
whether the declarant was “still dominated by the
emotions, excitement, fear, or pain of the event.”  Lawton v. State, 913 S.W.2d 542, 553 (Tex. Crim.
App. 1995) (en banc).  Additional
factors include the amount of time that has elapsed, whether any intervening
circumstances occurred between the event and the statement, and whether the
declaration was in response to questioning. 
Id.; Mosley v. State, 960 S.W.2d 200, 204
(Tex. App.—Corpus Christi 1997, no pet.).  If the statements are made while the witness
is in the grip of emotion, excitement, fear, or pain and they relate to the
exciting event, they are admissible even after an appreciable amount of time
has elapsed.  Penry v. State, 691 S.W.2d
636, 647 (Tex. Crim. App. 1985) (en banc); Jones v. State, 772 S.W.2d 551, 555
(Tex. App.—Dallas 1989, writ ref’d).

            Appellant challenges the statements
admitted by the trial court on the following grounds: (1) too much time had
passed between the startling event and the statements; (2) while the intrusion
was a startling event, any statements made relating to stealing checks do not
relate to the intrusion, and stealing checks is not a startling event by
itself; and (3) a twenty-minute conversation cannot be an excited
utterance.  In this case, the prosecution
introduced Clay’s hearsay statements through the testimony of her daughter,
Kathy Crary, which demonstrated two startling events occurred giving rise to the excited utterance: (1) two
people walked into her house uninvited, and (2) they stole her checks, $4,000
in cash, her social security identification card and a photo ID.  After the intrusion, Clay called one of her
daughters, Pam Bass, who lived nearby, and Clay also called the police.  Crary received a
call from her sister shortly thereafter, and Crary
immediately called her mother.  When Crary spoke with her mother, approximately 1½ hours to 2½
hours had passed since the intruders left, and Clay was upset, weeping and
traumatized by the events.  During their
entire conversation, Clay was crying and “worried to death” the intruders would
wipe out her account.  Crary testified that the fact her mother’s checks were
stolen was “definitely” causing her mother’s traumatic state.

            Based on this predicate, the trial
court allowed the hearsay statements. 
While the gap in time and the intervening events are factors to be
considered, the prosecution has satisfied the “critical factor.”  See Lawton, 913 S.W.2d at 553.  It
is clear from her daughter’s testimony that Clay was still dominated by the
emotions, excitement and fear of the events when she made the statements 1½ to
2½ hours later.  She was upset, weeping,
and traumatized to the point that she needed her daughter to drive 83 miles to
calm her down.  Accordingly, we find the
trial court did not abuse its discretion in admitting the hearsay statements
under the excited utterance exception.  

            Since we have determined the
statements fall within the excited utterance exception, we need not address
whether the statements were admissible under the state of mind exception.  Point of error two is overruled.

IV. 
Confrontation Clause

            In
point of error one, appellant contends the trial court violated her Sixth
Amendment right of confrontation by admitting the hearsay statements made by
Clay.  Admission of hearsay evidence
necessarily implicates the Confrontation Clause because the defendant is not
given the opportunity to confront an out-of-court declarant.  Simpson v. State, 119 S.W.3d 262, 269 (Tex. Crim. App. 2003).  Under the Confrontation Clause, a hearsay
statement is admissible only if it bears sufficient “indicia of
reliability.”  Ohio v. Roberts, 448 U.S. 56, 66 (1980).  Thus, the
Confrontation Clause bars the admission of certain evidence that would otherwise
be admissible under an exception to the hearsay rule.  Idaho v. Wright, 497 U.S. 805, 814 (1990).  A statement is
per se reliable if it falls within a
firmly rooted exception to the hearsay rule. 
Guidry v. State,
9 S.W.3d 133, 149 (Tex. Crim. App. 1999).  However, even if a statement does not fall
within a firmly rooted exception, it may still be sufficiently reliable if it
has “particularized guarantees of trustworthiness.”  Id. at 150.   

            An excited utterance is among the
firmly rooted exceptions to the hearsay rule. 
Lilly v. Virginia, 527 U.S.
116, 126 (1999) (noting the exception is at least two centuries old, currently
widely accepted among the States, and carries substantial guarantees of
trustworthiness); Penry v. State, 903 S.W.2d 715, 751 (Tex. Crim. App. 1995). 
Indeed, a statement that is made in the grip of excitement, before the declarant has the opportunity to reflect, may carry more
weight with the trier of fact than a comparable
statement offered subsequently by the declarant in the
relative calm of the courtroom.  Lilly, 527 U.S. at 126.  A statement
that falls within a firmly rooted hearsay exception is so trustworthy that
cross examination would add little to its reliability.  Wright,
497 U.S. at
820–21.  Since we have already found the
statements fall within the excited utterance exception, they are deemed per se reliable under the Confrontation
Clause.  See Guidry, 9 S.W.3d at 149.  Therefore, the Confrontation Clause was not
violated. 

            Appellant for the first time alleges
Clay’s statements should not have been admitted because the declarant
was incompetent.  Appellant is attempting
to disguise this claim under the umbrella of a reliability challenge, claiming
that because Clay was suffering from an early stage of dementia, the statements
could not bear the sufficient “indicia of reliability.”  Appellant states in her brief: “Surely, the
statements of a person suffering from dementia cannot be said to have
sufficient indicia of reliability to be admitted without violating the Confrontation
Clause.  If it can, the Sixth Amendment
[sic] might as well be erased from the books.” 
However, at no time did appellant object to the reliability of the
statements, much less make any indication to the trial court that Clay’s
competence was in issue.  We will not
address this issue which appellant raises for the
first time on appeal.  Tex. R. App. P. 33.1.

            Accordingly, we find the
Confrontation Clause was not violated because the out of court statements made
by Clay fell within a firmly rooted hearsay exception.  We overrule appellant’s first point of error.

V.  Improper Jury Argument

            In
her final point of error, appellant argues the trial court erred in denying her
motion for mistrial following alleged improper jury argument.  The prosecution argued during closing that
appellant “knew what happed in Arkansas, and . . .
at the very least, she’s covering up for somebody there.”  Appellant argues the prosecution knew
appellant had nothing to do with the intrusion into Clay’s house, and the
comment was made to inflame the jury with the suggestion that she was involved
or covering up for somebody.  The trial
court sustained appellant’s objection, and upon request, instructed the jury to
disregard the comment.  

            We need not decide whether the
comment made by the prosecutor was proper because we find that even if it was
improper, the trial court’s instruction cured any harmful effects.  Parr v. State, 606 S.W.2d 928, 930–31 (Tex. Crim.
App. 1980).  An instruction to
disregard will normally cure any error, and we presume the jury complied with
the instruction.  Wesbrook v. State, 29 S.W.3d 103,
116 (Tex. Crim. App. 2000) (en banc).  Only offensive or flagrant error warrants
reversal when an instruction to disregard has been given.  Id.  Thus, if the instruction cured any harm, the
trial court did not abuse its discretion in denying the motion for
mistrial.  Barnes v. State, 70 S.W.3d 294, 309
(Tex. App.—Fort Worth 2002, pet. ref’d).  In this case, we find the trial court’s
prompt instruction to disregard cured any harm. 
We overrule appellant fifth point of error.  

Conclusion

            Having
overruled appellant’s five points of error, we affirm the judgment of the trial
court.  

 

                                                                                    

                                                                        /s/        John S. Anderson

                                                                                    Justice

 

Judgment
rendered and Memorandum Opinion filed December 30, 2003.

Panel
consists of Chief Justice Hedges and Justices Anderson and Seymore.

Do Not
Publish — Tex. R. App.
P. 47.2(b).

 











            [1]  Texas Penal Code § 32.21 provides, in part,
as follows:

 

“Forge”
means: (A) to alter, make, complete, execute, or authenticate any writing so
that it purports: (i) to be the act of another who
did not authorize that act; . . . or (B) to issue, transfer, register the
transfer of, pass, publish, or otherwise utter a writing that is forged within
the meaning of Paragraph (A); . . . A person commits an offense if he forges a
writing with intent to defraud or harm another.” 

 

Tex. Pen. Code Ann. § 32.21(a) & (b) (Vernon Supp. 2004).   





            [2]  Appellant, as bearer of the instrument,
converted the check into cash.  To
accomplish this, she was required to make a blank indorsement.  “If an indorsement
is made by the holder of an instrument [without other words] . . . it is a
‘blank indorsement.’ 
When indorsed in blank, an instrument becomes payable to [the] bearer and
may be negotiated by transfer of possession alone . . . .”  Tex.
Bus. & Com. Code Ann. §
3.205(b) (Vernon 2002). 






            [3]  During closing argument, appellant’s counsel
vigorously argued that this case turns on credibility and whether the jury
chose to believe appellant. 





            [4]  The trial court did not specifically state
its decision was based on either excited utterance or then existing mental
condition; however, the basis of the court’s ruling is irrelevant to our
determination.  If a trial court’s
decision to admit certain testimony is correct on any theory or law applicable
to the case, we will uphold its decision. 
Romero v. State,
800 S.W.2d 539, 543 (Tex. Cr. App. 1990) (en banc).