NUMBER 13-02-134-CR
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI – EDINBURG

 

SANTOS ABEL HERNANDEZ,                                                              Appellant,
v.
THE STATE OF TEXAS,                                                                       Appellee.

 
 
On appeal from the 36th District Court
of Aransas County, Texas.




MEMORANDUM OPINION
 
Before Justices Castillo, Garza, and Baird




Memorandum Opinion by Justice Baird
 
            Appellant was charged in a two-count indictment with the offenses of
aggravated sexual assault and aggravated kidnapping. A jury convicted appellant of
the charged offenses. The jury assessed punishment of twenty years in the Texas
Department of Criminal Justice–Institutional Division and fines of $5,000 for each
count. We affirm.



I. Voluntariness of Confession.
         The first point of error contends the trial judge erred in denying appellant’s
motion to suppress his written statement.
A.
         The record reflects that appellant was arrested and subsequently gave a written
inculpatory statement to Captain Jerry Lawing, Operations Commander for the Aransas
County Sheriff’s Office. Lawing and appellant testified at the hearing on the motion
to suppress the statement. At the conclusion of the hearing, the trial judge entered
findings of facts and conclusions of law and denied the motion. The statement was
subsequently admitted into evidence at the trial on the merits.
         At a hearing on the voluntariness of a confession, the trial court is the sole judge
of the weight and credibility of the witnesses. Miniel v. State, 831 S.W.2d 310, 315
(Tex. Crim. App. 1992); Lamb v. State, 680 S.W.2d 11, 15 (Tex. Crim. App. 1984).
The trial judge may believe or disbelieve all or any part of any witness's testimony.
Lamb, 680 S.W.2d at 15. When reviewing a trial court's determination of the
voluntariness of a confession, the appellate court must determine whether the trial
court abused its discretion. Miniel, 831 S.W.2d at 315. Absent an abuse of
discretion, the trial court's findings will not be disturbed. Id. 
B.
         Appellant contends his statement was involuntary in the following three
respects: (1) he “did not knowingly, intelligently and voluntarily waive his various
rights;” (2) Lawing “threatened appellant with being locked up for 40 years or more
if appellant did not give the statement;” and (3) Lawing promised appellant “counseling
for his alcohol problem if appellant would make the statement.” We will address these
contentions seriatim. 
1.
         Lawing testified that he spoke to appellant and explained to him his various
rights. Lawing stated that appellant did not appear to be under the influence of any
type of alcohol or drug and that he understood his rights. Specifically, appellant
initialed each of the rights, and then wrote “yes” and initialed the following questions: 
“Do you fully understand the warnings and rights you have just heard?” and “Do you
knowingly, intelligently and voluntarily waive the rights you just heard and agree to
make a statement if questioned further?” Prior to appellant signing the statement,
Lawing again explained these rights. Appellant signed every page of the statement
and those signatures were witnessed by two officers. 
         Appellant testified that he was told of his rights and that he understood those
rights. Appellant stated that he read the warnings, initialed each, and signed the
statement. The following exchange occurred on direct examination:
Q. If it says, “Do you knowingly, intelligently and voluntarily waive these
rights,” what does that mean?
 
A. That’s to my knowledge if I - - that I believe that I have the right to
all of those rights.
 
Q. Okay. What does “to waive a right” mean?
 
A. To give it up.
 
Q. Okay. And did you voluntarily give up those rights?
 
A. Apparently, yes.
 
Q. Well, what do you mean “apparently?”
 
A. I signed it.
 
Q. Okay. Did you sign it of your own free will?
 
A. Yes.

Finally, on cross-examination, appellant answered “yes” when he was asked “And you
voluntarily gave this statement?” 
         In light of this evidence, we hold that the trial court did not abuse its discretion
in finding appellant knowingly, intelligently and voluntarily waived the rights provided
by the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon
1979 & Supp. 2003).
2.
         The second argument deals with whether Lawing threatened appellant in order 
to obtain the statement. We find conflicting testimony on this issue. Lawing
specifically testified that he did not threaten or coerce appellant into giving the
statement. Moreover, this testimony is confirmed by the statement which provides
in two separate places the following language immediately above appellant’s signature: 
“I was asked more questions and the answers I gave caused the following written
statement to be prepared by Capt. Lawing [sic] in answering the questions I acted
voluntarily of my own free will and accord without being induced to do so by any
compulsion, persuasion, threats or promises.” (Emphasis added).
         On the other hand, appellant testified that Lawing spoke of appellant getting out
of jail if he gave a statement, but that if he did not “they got enough evidence to lock
me up for 40 years or more.” Appellant testified that this scared him into giving the
statement.
         The aforementioned testimony presents a classic swearing match. The ultimate
determination of who to believe rested with the trial judge. Miniel, 831 S.W.2d at 315
(trial court sole judge of the weight and credibility of witnesses at hearing on
voluntariness of confession); Lamb, 680 S.W.2d at 15 (trial judge may believe or
disbelieve all or any part of any witness's testimony). In light of this conflicting
testimony we hold the trial court did not abuse its discretion in believing the testimony
of Lawing over appellant.
3.
         Appellant’s third and final argument under this point of error is that Lawing
promised appellant “counseling for his alcohol problem if appellant would make the
statement.” A confession is inadmissible where "the confession was not voluntary,
being induced by promise, persuasive and positive, by one in authority." Fisher v.
State, 379 S.W.2d 900, 902 (Tex. Crim. App. 1964) (citing Searcy v. State, 28 Tex.
Ct. App. 513, 13 S.W. 782 (1890)).
         As noted above, in two separate places on the statement, immediately above
appellant’s signature, is the following language: “I was asked more questions and the
answers I gave caused the following written statement to be prepared by Capt. 
Lawing in answering the questions I acted voluntarily of my own free will and accord
without being induced to do so by any compulsion, persuasion, threats or promises.” 
(Emphasis added). Additionally, when asked: “And prior to and during the taking of
this statement did you ever promise [appellant] anything at all?” Lawing answered: 
“no.” On cross-examination, the following exchange occurred:
Q. Do you recall telling [appellant] that you would be trying to get him
some help?
 
A. I may have told him that, yes, ma’am.
 
Q. Do you recall what it was you told him?
 
A. When I told him?
 
Q. What it was exactly you told him?
 
A. After we was through with the statement?
 
Q. Uh-huh.
 
A. I told him that we would see about, you know, trying to get him
some help.
 
Q. And are you saying you did that after the statement was completed
or before the statement was completed?
 
A. After it was completed.
 
Q. During the course of the statement, then, you’re saying you did not
tell him anything about getting him some help if he would just confess?
 
A. No, ma’am.

         Appellant testified he was told that if he told Lawing what had happened
appellant “would get counseling for [his] alcohol problem.” Later during appellant’s
testimony, the following exchange occurred:
Q. ... When you finished giving this statement or whatever, signing this
statement, what did you think was going to happen next?
 
A. Well, I figured I would get a visit from a counselor, he said from MH-MR, would come see me about my alcohol problem . . . .”

When asked about the above quoted portion of the statement, the following exchange
occurred:
Q. Okay. And it says, “I was not promised anything in return [for] this
statement.”
 
A. Right. He never promised it, he said he would.
 
Q. What’s the difference?
 
A. Well, a promise is saying I promise to do it; saying you’re going to do
something is saying you’re going to do it.

         We reject appellant’s argument for two reasons. First, the trial judge could have
believed Lawing that there was no mention of counseling for appellant’s alcohol
problem until after the statement was given. Under that scenario, such a “promise”
could not have served to induce appellant into making the statement.
         Second, "a four-prong test must be met in order to render a confession obtained
by a promise of a benefit involuntary." Sossamon v. State, 816 S.W.2d 340, 345
(Tex. Crim. App. 1991). Under this test, the promise must be: (1) of some benefit to
the defendant, (2) positive, (3) made or sanctioned by a person in authority, and (4)
of such character as would be likely to influence the defendant to speak untruthfully.
See id. Assuming arguendo that appellant established the first three prongs of the
Sossamon test, there is no record evidence to establish the fourth prong. The
Sossamon court stated that for a promise to influence the defendant to speak
untruthfully, that promise would have to incline the defendant to admit to a crime he
had not committed. For a promise to render a confession involuntary, the inducement
must have probably caused the accused to falsely inculpate himself. Espinosa v.
State, 899 S.W.2d 359, 364 (Tex. App.–Houston [14th Dist.] 1995, pet. ref'd). 
It is not enough that an inducement might have evoked a statement from
a mute suspect. Neither are we called on to decide whether the
inducement could have persuaded the defendant to inculpate himself.
Rather, the promise made to the defendant must be of such character as
would be likely to influence the defendant to speak untruthfully. In other
words, a promise will not render a confession involuntary unless the
inducement was so great that it probably caused the accused to falsely
inculpate himself. 

Id. at 363-364 (citation omitted). In the context of the present case, we hold that a
promise of treatment for an alcohol problem is not the type of promise that would
induce appellant to confess to a crime he had not committed. See id.
         For both of these reasons, we hold that the trial court did not abuse its 
discretion in finding appellant’s statement was not induced by any promise made by
Lawing.
C.
         For the reasons stated above, there is no showing that the trial court abused its
discretion. Consequently, we are not at liberty to disturb his findings. See Miniel, 831
S.W.2d at 315. Accordingly, the first point of error is overruled.
II. Sufficiency Challenges.
         The second and third points of error contend the evidence is legally and factually
insufficient to support the jury’s verdict. Legal sufficiency is the constitutional
minimum required by the Due Process Clause of the Fourteenth Amendment to sustain
a criminal conviction. Jackson v. Virginia, 443 U.S. 307, 315-16 (1979). The
appellate standard for reviewing a legal sufficiency challenge is whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Id. at 320. The evidence is examined in the light most favorable
to the fact-finder. Id. Under a factual sufficiency review the evidence is viewed in a
neutral light, favoring neither party. Clewis v. State, 922 S.W.2d 126, 134 (Tex.
Crim. App. 1996). In this neutral light, we consider and weigh all the evidence and
set aside the verdict only if the evidence supporting guilt is so obviously weak, or the
contrary evidence so overwhelmingly outweighs the supporting evidence, as to render
the conviction clearly wrong and manifestly unjust. Johnson v. State, 23 S.W.3d 1,
11 (Tex. Crim. App. 2000). Under this standard, if the appellant is attacking an
adverse finding on an issue on which he did not have the burden of proof, he must
demonstrate that there is insufficient evidence to support the adverse finding. Id. at
7.
         Each of appellant’s sufficiency challenges are premised upon the success of the
first point of error, namely that the trial judge erred by admitting appellant’s written
statement into evidence. We reject these points of error for two separate reasons.
         First, having overruled the first point of error, appellant’s premise is flawed. The
written statement was properly admitted into evidence. Appellant concedes that
statement is inculpatory. Specifically the statement contains the following language,
inter alia: “I remember grabbing [the complainant] and putting my hand around his
mouth and started to squeeze with both my arms. I put him on the ground and I
[committed a sexual act].” This evidence along with the other evidence admitted at
trial is sufficient to prove the essential elements of offenses alleged in both counts of
the indictment. Jackson, 443 U.S. at 315-16; Johnson, 23 S.W. 3d at 7.
         Second, assuming arguendo, the trial court had erred in admitting appellant’s
written statement into evidence, we would nevertheless consider that statement in
considering whether the evidence was legally and factually sufficient because
reviewing courts are required to consider all of the evidence, even that which the trial
court may have improperly admitted. Bobo v. State, 843 S.W.2d 572, 575-76 (Tex.
Crim. App. 1992) (when evaluating the sufficiency of the evidence, the reviewing
court must look at all the evidence, whether properly or improperly admitted.). In
other words, regardless of success of the first point of error, the statement must be
considered in our sufficiency evaluation. When that statement is considered in
connection with the other evidence offered by the State, the evidence is both legally
and factually sufficient to support the jury’s verdict. Therefore, for this alternative
reason, we must reject appellant’s sufficiency challenges.
         For these reasons, the second and third points of error are overruled.
III. Excited Utterance.
         The fourth point of error contends the trial court erred in admitting the hearsay
statements spoken by the complainant to his mother and sister after the alleged
offenses. See Tex. R. Evid. 801(d). The State counters that the statements were
excited utterances which are not excluded by the hearsay rule, even though the
declarant is available as a witness. Tex. R. Evid. 803(2). An excited utterance is a
statement relating to a startling event or condition made while the declarant was under
the stress of excitement caused by the event or condition. Id. The excited utterance
exception to the hearsay rule is founded on the belief that statements made as a result
of a startling or exciting event are involuntary and do not allow the declarant an
adequate opportunity to fabricate, thereby ensuring enough trustworthiness to fall
outside the hearsay exception. Hunt v. State, 904 S.W.2d 813, 816 (Tex. App.–Fort
Worth 1995, no pet.). The hearsay statement contains the sufficient requisite indicia
of reliability to be admissible when the statement is shown to be a spontaneous
utterance. Sellers v. State, 588 S.W.2d 915, 918 (Tex. Crim. App. [Panel Op.]
1979). 
         For the utterance to be admissible under rule 803(2), the statement must be the
product of a startling event, the declarant must have been dominated by the emotion,
excitement, fear, or pain of the event, and the statement must be related to the
circumstances of the startling event. McFarland v. State, 845 S.W.2d 824, 846 (Tex.
Crim. App. 1992). The general rule is that no single rigid principle governs the
admissibility of statements under the excited utterance rule. Jones v. State, 772
S.W.2d 551, 554-55 (Tex. App.–Dallas 1989, pet. ref'd). The critical factor is
whether the declarant made the statement while dominated by the emotion arising
from a startling event or condition. McFarland, 845 S.W.2d at 846. Generally, a trial
court is given broad discretion in deciding whether the proper foundation is laid for the
admission of evidence. Smith v. State, 683 S.W.2d 393, 404 (Tex. Crim. App.
1984). We review the trial judge’s decision to admit evidence under the abuse of
discretion standard stated in Montgomery v. State, 810 S.W.2d 372, 390 (Tex. Crim.
App. 1990), namely whether that decision was within the zone of reasonable
disagreement.
         The complained-of statements were admitted through the complainant’s mother
and sister. Prior to eliciting the statements, the State questioned the complainant’s
mother to determine whether the complainant was dominated by the emotion arising
from a startling event or condition. See McFarland, 845 S.W.2d at 846.
Q. From the time that you found [the complainant] - - [the complainant]
was brought to you, I guess - - from the time the police arrived, how
much time elapsed? Can you give me a questimation [sic]?
 
A. I would say ten, fifteen minutes. they couldn’t find our house.
 
Q. During this time frame, was [the complainant] still distraught?
 
A. Yes. He was going in and out of unconscious. He’d go to sleep and
wake up, go to sleep and wake up. I kept shaking him, not really hard
shake but like, nudging him not to go to sleep. And E.M.S. was on the
line, or actually the sheriff was on the line and they said, “Do not let him
go to sleep.”

***
 
Q. Did [the complainant] ever tell you what happened to him?
 
A. Yes, sir.
 
Q. What did he tell you?
 
A. I asked him whenever I frost [sic] got [the complainant] ‘cause [the
sister] handed him to me. I was looking at him. After I cleared his
mouth and stuff ‘cause I cleared his mouth and nose out, and I asked
[the complainant], “[the complainant], honey, what happened?”
 
And his first reaction was he looked very scared and he was
shaking and he says, “A man hurt me.”

         Similarly, the complainant’s sister testified as follows to the circumstances prior
to the complainant’s statements:
A. ... And I proceeded to get [the complainant] to walk, but he would
not walk. So I carried him in the house.

***
 
Q. Did he appear injured to you?
 
A. Yes, sir.
 
Q. Can you describe some of the things you saw?
 
A. He had scratches on his legs like I said, and his bottom shorts were
wet. He had scratches on his face, his arms, and he had sand all over his
face.
 
Q. Did he appear upset?
 
A. Very upset.
 
Q. Did he appear scared?
 
A. Yes.

         When we consider this testimony, we find there was ample evidence in the
record that the complainant was distraught, frightened, and upset at the time he made
the complained of statements to his mother and sister. In light of the aforementioned
authority, we hold the trial court did not abuse its discretion in finding the
complainant’s statements to his mother and sister were the product of a startling
event, the declarant was dominated by the emotion, excitement, fear, or pain of the
event, and the statement related to the circumstances of the startling event. Id. 
Consequently, the fourth point of error is overruled.
         The judgment of the trial court is affirmed.
 
                                                                                                    
                                                                        CHARLES BAIRD,
                                                                        Justice
Do not publish.
Tex. R. App. P. 47.2(b).

Opinion delivered and filed
this 26th day of February, 2004.