**John Paul SNELLEN, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–95–00158–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted March 26, 1996.

Decided May 24, 1996.

**240**

Pam Campbell, Paris, for appellant.

Tom Wells, County Attorney of Lamar County, Paris, for appellee.

Before CORNELIUS, C.J., and GRANT, J.[1]

## OPINION

CORNELIUS, Chief Justice.

John Paul Snellen, Jr. was convicted on two counts of aggravated sexual assault, two counts of indecency with a child, and two counts of indecency with a child by exposure. The jury set Snellen's punishment at two twenty-five year prison terms, two twenty-year terms, and two ten-year terms, all to be served concurrently. Snellen appeals, contending that the trial court erred in allowing the State to introduce evidence of uncharged sexual acts Snellen committed against the complainant, in admitting hearsay statements by the complainant, and in admitting expert testimony as to the complainant's truthfulness. Snellen also contends that, if these errors were waived or were not properly preserved for review, he was denied effective assistance of counsel and should be granted a new trial. Snellen does not challenge the sufficiency of the evidence to support the jury verdict. We overrule all these contentions and affirm the judgment.

The complainant, L.H., was Snellen's stepdaughter. She became thirteen years old on December 24, 1994. She is learning disabled, having an IQ of about 72, as opposed to a normal IQ of 90 to 110. She has had a long-term problem with bed-wetting.

Snellen testified that before he would retire each night, he would wake L.H. and take her to the bathroom, so she would not wet the bed. L.H.'s mother, Snellen, and Snellen's mother all testified that L.H. was a sound sleeper who had difficulty waking. L.H. testified that on the occasions charged in the indictment, after Snellen took her to the bathroom, he laid her on the floor in her bedroom, pulled her underwear down around her knees, rubbed her breasts, and put his finger and then his penis in her vagina. She

---

**1.** Justice Charles Bleil was a member of the Court when this case was argued and submitted, and participated fully in the consideration of this case, but resigned from the Court before the opinion was issued.

testified that she was not completely awake during these assaults.

Snellen first argues that the trial court erred in allowing the State to introduce evidence that Snellen had sexually abused L.H. on occasions other than those alleged in the indictment.

During redirect examination the prosecutor asked L.H., "Now ... December 22nd and December 29th aren't the only times this has happened to you, is it?" L.H. replied, "No." She testified it had been happening since she was five or six, or for about seven or eight years. Dr. Tom Cutrell, a treating physician, testified that L.H. told emergency room personnel this conduct had been going on for two years. Corretta Bertrand, a child protective service worker and the State's outcry witness, testified that L.H. told her she believed it had been going on since she was ten, but that she was not sure.

The State filed a pretrial notice of intent to use other acts evidence pursuant to TEX. CODE CRIM.PROC.ANN. art. 38.072 (Vernon Supp.1996) and TEX.R.CRIM.EVID. 404(b). The State said it would use the evidence to show motive, opportunity, intent, scheme and plan, and absence of mistake or accident, and as rebuttal in case of an attack on L.H.'s credibility. The evidence also would be admissible, the State said, "to show a lascivious attitude and willingness to act on it that a judge or jury might otherwise be loathe to attribute to a parent."

Evidence of other crimes, wrongs, or acts may not be used as proof of a person's character to show that he acted in conformity therewith. The evidence may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R.CRIM.EVID. 404(b); *Montgomery v. State,* 810 S.W.2d 372, 388 (Tex.Crim.App.1990). Although relevant, evidence of other acts may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or if it would cause undue delay or needless presentation of cumulative evidence. TEX.R.CRIM.EVID. 403.

Before the adoption of the Rules of Criminal Evidence, Texas recognized a special exception to the rule of general inadmissibility of extraneous offenses in cases of sexual abuse of a child by one standing in a parental relationship. The State was allowed to introduce evidence of other offenses committed by the accused against the child victim to show the broad context in which the offense occurred. *Boutwell v. State,* 719 S.W.2d 164, 175 (Tex.Crim.App.1985) (citing *Battles v. State,* 63 Tex.Crim. 147, 140 S.W. 783 (1910)). It was considered that such evidence was relevant to explain the charged act and to show the unnatural nature of the act in light of the parties' relationship, as well as to make a child's accusation more plausible. *Boutwell v. State,* 719 S.W.2d at 175. The Court of Criminal Appeals reexamined the exception in *Vernon v. State,* 841 S.W.2d 407 (Tex.Crim.App.1992), and held that the rule reiterated in *Boutwell* had no legal validity apart from Rule 404(b), that is, the admissibility of other-crimes evidence involving the parent/accused and the child is conditioned on the relevancy of the evidence to some material issue in the case. *Vernon v. State,* 841 S.W.2d at 410. The "unnatural relationship" between a parent and child is not itself a material fact in these cases. *Id.* at 411.

■ The Legislature has since amended the Code of Criminal Procedure to allow evidence of the defendant's and the child's states of mind and of the subsequent relationship between the defendant and the child. TEX.CODE CRIM.PROC.ANN. art. 38.37 (Vernon Supp.1996). This amendment applies to any criminal proceeding that commences on or after the amendment's effective date, September 1, 1995. Act of May 28, 1995, 74th Leg., ch. 318, § 48(b), 1995 Tex.Gen.Laws 2749. It does not apply here because this prosecution began with the grand jury's indictment on April 5, 1995, before the amendment's effective date. *Barrera v. State,* 163 Tex.Crim. 132, 289 S.W.2d 285, 288 (1956) (citing *Garlington v. State,* 141 Tex.Crim. 595, 150 S.W.2d 253 (1941)); *see also Vasquez v. State,* 557 S.W.2d 779, 782 (Tex.Crim. App.1977); *Bonner v. State,* 832 S.W.2d 134, 138 (Tex.App.—Amarillo 1992, pet. ref'd); 22 C.J.S. *Criminal Law* § 206 (1989).

■ We find, however, that Snellen failed to preserve error with regard to the extraneous act evidence. When the prosecutor first questioned L.H. about the extraneous conduct, Snellen's counsel merely said, "Objection." Such a general objection, without expressing the specific grounds therefor, is insufficient to preserve error unless the grounds for the objection are otherwise made known to the court. *Williams v. State*, 491 S.W.2d 142 (Tex.Crim.App.1973). Snellen had filed a pretrial motion in limine to exclude extraneous acts, but a motion in limine will not serve as an objection at trial. *Webb v. State*, 760 S.W.2d 263 (Tex.Crim. App.1988); *Rawlings v. State*, 874 S.W.2d 740 (Tex.App.—Fort Worth 1994, no pet.). But a motion in limine may be sufficient to apprise the trial court of the basis of a subsequent nonspecific objection at trial. *See Blacklock v. State*, 681 S.W.2d 155 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd). Snellen's motion in limine did not do so in this case, however. His motion asked only that evidence of extraneous acts be excluded because the prejudicial effect of the evidence would outweigh its probative value, and the motion specifically referred to TEX.R.CRIM. EVID. 403. The motion made no mention of the inadmissibility of the extraneous act evidence on the basis of a lack of relevance.

■ To properly preserve error with regard to inadmissible extraneous offense evidence, a party must first object under Rule 404(b) that the evidence is irrelevant. Once that objection is made, the proponent of the evidence must then satisfy the trial court that the evidence has relevance apart from its tendency to prove character conformity. Once the trial court rules that the evidence is relevant apart from character conformity, the opponent must then object that the evidence, although relevant, should not be admitted because its probative value is substantially outweighed by the danger of unfair prejudice. The court then is required to conduct a balancing test to determine that question. *Montgomery v. State, supra; Beasley v. State*, 838 S.W.2d 695 (Tex.App.—Dallas 1992, no pet.).

Even if Snellen's motion in limine sufficed to apprise the trial court of the nature of his objection at trial, the ground so brought to the court's attention by that motion was undue prejudice under Rule 403, not the initial relevancy objection that must be brought first under Rule 404. Consequently, the trial objection as to relevancy under Rule 404 was not specific enough to preserve error, and it was not cured by the motion in limine that referred to other grounds. And, once the trial court ruled on relevancy, it was incumbent on Snellen to again object and ask for a balancing test. *Montgomery v. State, supra; Beasley v. State, supra.*

Snellen also contends that the trial court erred in admitting into evidence L.H.'s outcry statement to Corretta Bertrand. Snellen argues that the statements were not admissible under the outcry statute and were inadmissible hearsay.

Article 38.072 of the Code of Criminal Procedure allows the State to introduce the outcry statement of a child sexual abuse victim twelve years of age and under. L.H. was twelve years old on the date of the first alleged offense, but she was five days past thirteen at the time of the second alleged offense. On Snellen's objection, the trial court first excluded L.H.'s statements about the second offense, but later rescinded that ruling and admitted the statements as to both offenses on the ground that Snellen had "opened the door" to such evidence.

■ We conclude that L.H.'s statement with regard to the first alleged offense was admissible as an outcry statement pursuant to Article 38.072, and the remainder of the statement was admissible as an excited utterance, an exception to the hearsay rule.

L.H. spent the night at her grandmother's house on December 28. Her young cousin also was there. The cousin testified that L.H. told her that Snellen had been abusing her. On the evening of December 29, the cousin told her mother what L.H. had said the previous night. The cousin's mother contacted the grandmother, who contacted child protective services. Bertrand spoke with L.H. on the morning of December 30, and L.H. told her of the assault the previous night. Bertrand said that when she interviewed L.H., the child "seemed nervous."

She further said, "Her eyes were sort of pink like she had been crying or about to cry. She sat down, and her hands were trembling, and, she was real teary-eyed."

■ No single, rigid principle governs the admissibility of evidence under the excited utterance rule. *Jones v. State,* 772 S.W.2d 551, 554–55 (Tex.App.—Dallas 1989, pet. ref'd). The element of time is important, but it is not the controlling factor. *Id.* at 555. The paramount factor is whether the declarant is still dominated at the time by emotions triggered by the principal act or event. *Id.* If the statements were made while the declarant was in the grip of emotion, excitement, fear, or pain, and they relate to the exciting event, they are admissible even after an appreciable time has elapsed between the exciting event and the statement. *Id.*

If the assault on L.H. occurred between 11:00 p.m. and midnight on December 29, and she spoke to Bertrand in the morning of December 30, at the most twelve to thirteen hours could have passed.

We conclude that there is sufficient evidence that L.H. was still under the influence of emotion, excitement, fear, and pain arising from the assault when she spoke to Bertrand. Thus, her statement was properly admitted as an excited utterance under Tex. R.Crim.Evid. 803(2).

■ Moreover, even if the statement did not qualify as an excited utterance, the part of it that related to the first assault was clearly admissible as an outcry statement, and the admission of the remainder of the statement would be harmless, as it was largely repetitious and served mainly to show the context of the offense with regard to a continuing course of conduct.

■ Snellen also complains because Dr. Tom Cutrell, who examined L.H. a few days after the second charged offense, was allowed to give his opinion that L.H. was truthful. The challenged evidence came in when Snellen's defense counsel was cross-examining Dr. Cutrell:

Q: Doctor, is it correct to say, that while you found no physical medical evidence to support [the child's] claim of sexual abuse, you also found no evidence to say that it didn't occur. I mean that it did occur.

A: I consider the history, and my knowledge of the child, and her comfort with me as opposed, say, to the emergency room physician, or anyone else she didn't know, to be significant. Although, I did not find any physical evidence, the way she told the story, and my knowledge of sexual abuse in children of her age convince me that she was telling me the truth.

Q: So you're essentially making a credibility assessment rather than a medical finding?

A: There was no physical evidence.

Defense counsel did not object to Dr. Cutrell's comments, either on grounds that they were nonresponsive or that they were hearsay or constituted improper opinions. Indeed, defense counsel pursued the matter further by asking the doctor if he was essentially making a credibility assessment. After the matter was raised in cross-examination, the prosecutor was within his rights to explore the matter by asking the doctor if he believed L.H. was telling the truth. Because defense counsel did not object and actually elicited the opinion testimony by Dr. Cutrell, she has waived any complaint.

In his last point of error, Snellen contends that he was denied effective assistance of counsel. The sole basis for this contention is that his counsel at trial was deficient because she failed to object to the opinion Dr. Cutrell gave about L.H.'s truthfulness.

■ Effectiveness of counsel is gauged by the totality of the representation. *Ex parte Duffy,* 607 S.W.2d 507, 516 (Tex.Crim. App.1980). The constitutional right to counsel does not guarantee errorless counsel or counsel whose competency is judged by hindsight. Rather, it guarantees counsel reasonably likely to render and rendering reasonably effective assistance. *Ex parte Cruz,* 739 S.W.2d 53, 57–58 (Tex.Crim.App.1987). An isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel. Nor is counsel rendered ineffective merely because she may have made a mistake during trial and other counsel might have tried

the case differently. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim.App.1984). To obtain a reversal because of ineffective assistance, the appellant must show that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that but for the deficient performance, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Defense counsel's failure to object to opinions about L.H.'s truthfulness constituted a single isolated incident that, even if considered an error, was not typical of defense counsel's representation. On the whole she rendered capable, effective, and diligent representation. Her very able representation of Snellen on appeal is an indication of her competence.

Moreover, we believe defense counsel's trial strategy was the only reasonably effective way to defend Snellen. The entire case was tried on the theory that, since there was no physical evidence of sexual assault or trauma and there was no corroboration of L.H.'s testimony, it was simply a test between L.H.'s credibility and Snellen's credibility. Snellen admitted most of the conduct toward L.H., but claimed that he did the things innocently to help L.H. The defense strategy was to question every witness about Snellen's truthfulness and to undermine L.H.'s truthfulness at every turn. As noted, this was the only defense Snellen had because he had admitted in an audiotaped conversation with his wife and admitted in the trial that on the occasions in question he had removed L.H.'s clothing, had carried her naked in his arms with her legs wrapped around his waist, had wiped her genital area, and had laid on or "hovered over" her in order to try to teach her how to react to a possible sexual assault. His only defense was to claim that L.H., in saying that he fondled and penetrated her, was not telling the truth, but was exaggerating the nature of his innocent conduct. This was not a strategy that fell below a reasonable standard of expertise, but a competent one that probably had the best chance of success.

Moreover, even if counsel's performance was deficient in this one regard, we conclude that it did not affect the outcome of the trial. The positive nature of L.H.'s testimony, coupled with Snellen's explanations, which were inconsistent at times and which conflicted with his statements on the audiotape, made it almost inevitable that the jury would believe the victim. We conclude that Snellen was not denied effective assistance of counsel according to the requirements of *Strickland v. Washington, supra,* and *Ex parte Duffy, supra.*

For the reasons stated, the judgment of the trial court is affirmed.