NO. 07-04-0432-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 17, 2004



______________________________




IN RE MIKE LEWIS, RELATOR



_______________________________



Before QUINN and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 In this original proceeding relator Mike Lewis seeks a writ of mandamus directing
251st District Court judge, the Honorable Patrick Pirtle, to render a default judgment against
one of four defendants Lewis sued. Concluding relator has failed to establish his
entitlement to mandamus relief, we will deny the petition.

 Relator filed suit against three individuals and Titan Aircraft, a foreign corporation. 
The petition alleged Titan's "home office" is located in Ohio, and the individual defendants
are residents of Florida. Each of the defendants was served by certified mail through the
Secretary of State. See Tex. Civ. Prac. & Rem. Code Ann. §17.44(b) (Vernon 1997). 
Before the August 9, 2004 answer date, Titan's president, John Williams, sent a letter to
the district clerk responding to the allegations against it in relator's petition. The letter was
on Titan's letterhead and contained the cause number. It is undisputed Williams was
acting on behalf of the corporate defendant Titan. Without further notice to or
communication with Titan, relator sought default judgment against the corporation.

 On relator's request pursuant to Rule of Civil Procedure 238, the trial court called
the appearance docket on August 23, 2004. Titan did not appear. Relator then requested
a no-answer default judgment pursuant to Rule 239. Relator presented evidence Williams
is not licensed to practice law in Texas. He offered a brief in support of his position that
the response submitted by Williams was ineffective as an answer, and he therefore was
entitled to a default judgment as a matter of law. The trial court found "the letter answer
filed by Titan Aircraft on or about August the second, 2004, is at least sufficiently effective
as an answer to prevent a default judgment," and denied relator's request. The court
granted relator's request to sever his claims against Titan. Relator filed his petition for writ
of mandamus on August 24, 2004, asserting four issues for our review. As suggested by
his presentation of a single argument in support of all four issues, those issues are aspects
of the single question whether the trial court abused its discretion in failing to grant a
default judgment.

Failure to Serve Petition on Real Party in Interest

 We initially address a procedural matter. The Rules of Appellate Procedure define
a person whose interest would be directly affected by the relief sought in an original
appellate proceeding as a real party in interest, and provide that such a person is a party
to the case. Tex. R. App. P. 52.1, 52.2. Relator's petition identifies Titan Aircraft as a
party. Rule of Appellate Procedure 9.5(a) requires service of copies of documents filed in
an appellate court on "all parties to the proceedings." Rule 6.3 provides that copies must
be sent to a party's lead counsel or to the party if not represented by counsel. Relator's
position is that Titan is not represented by counsel. Consequently, relator was obligated
to serve a copy of his petition on Titan. Relator's original petition in the trial court recited
the mailing address for Titan and the record he submitted to this court reveals relator's
correspondence with Titan. The certificate of service in relator's petition shows service of
that document only on the trial court judge. This omission indicates Titan has no notice of
this original proceeding, depriving it of an opportunity to respond. Relator's failure to serve
a copy of his petition on Titan would alone warrant denial of the relief requested. Tex. R.
App. P. 52.4.

Standard of Review

 A writ of mandamus is an extraordinary remedy that will issue only to correct a clear
abuse of discretion or the violation of a duty imposed by law, when there is no adequate
remedy by law. Canadian Helicopters Ltd. v. Wittig, 876 S.W.2d 304, 305 (Tex. 1994)
(orig. proceeding). It is the relator's burden to show entitlement to the relief being
requested. Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig.
proceeding). A court abuses its discretion by ruling arbitrarily, unreasonably or without
reference to any guiding rules and principles. Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985). A trial court also abuses its discretion by a clear failure
to analyze or apply the law correctly, because trial courts have no discretion in determining
what the law is or applying the law to the facts. Walker v. Packer, 827 S.W.2d 833, 840
(Tex. 1992). 

Failure to Grant Default Judgment

 Relator argues the letter response submitted by Titan's president is wholly without
effect because a corporation may only appear through counsel, see Kunstoplast of
America, Inc. v. Formosa Plastics Corp., USA, 937 S.W.2d 455, 456 (Tex. 1996); Rule of
Civil Procedure 239 authorizes a plaintiff to take a judgment by default against any
defendant who has not filed an answer; and a trial court has a non-discretionary duty to
render a default judgment against a non-answering defendant. 

 Relator devotes the bulk of his petition to challenging the trial court's finding that
Titan's letter answer was sufficient to prevent rendition of a default judgment. He
acknowledges the holding in Custom-Crete, Inc. v. K-Bar Services, Inc., 82 S.W.3d 655
(Tex.App.-San Antonio 2002, no pet.), that a letter filed by a non-attorney corporate officer
was an answer, albeit a "defective" one, sufficient to forestall a no-answer default
judgment, and similar holdings in R.T.A. International Inc. v. Cano, 915 S.W.2d 149,
(Tex.App.-Corpus Christi 1996, writ denied), and Handy Andy, Inc. v. Ruiz, 900 S.W.2d
739 (Tex.App.-Corpus Christi 1994, writ denied), but argues those cases are wrongly
decided. Relator advances several public policy grounds in his challenge of this line of
authority. He argues the holdings sanction the unauthorized practice of law, undermine
protections against frivolous pleadings, and create uncertainty as to whether the
corporation is bound by the officer's actions. His arguments, though, do not explain why
policy considerations require the entry of default judgment in such cases and cannot
adequately be addressed by less drastic procedural means. See KSNG Architects, Inc. v.
Beasley, 109 S.W.3d 894, 896-97, 899 n.5 (Tex.App.-Dallas 2003, no writ) (applying
R.T.A. International, but finding trial court did not err in striking answer on plaintiff's
motion); Hock v. Salaices, 982 S.W.2d 591, 593 (Tex.App.-San Antonio 1998, no writ)
(noting courts have "gone to great lengths to excuse defects in answers to prevent the
entry of default judgments against parties who have made some attempt, albeit deficient,
unconventional, or flat out forbidden under the Rules of Civil Procedure, to acknowledge
that they have received notice of the lawsuit pending against them" and finding such broad
definition of answer in the default judgment context to be proper because of the unfair
outcome that can result from a default); Handy Andy, Inc., 900 S.W.2d at 741 (in absence
of special exceptions, response by corporate officer was defective answer, not a nullity). 
See also Home Savings of America FSB v. Harris County Water Control & Improvement
Dist. # 70, 928 S.W.2d 217, 218-19 (Tex.App.-Houston [14th Dist.] 1996, no writ). The trial
court's finding that the response filed by Williams on behalf of Titan was sufficient to
prevent a default judgment does not reflect a clear failure to analyze or apply the law
correctly. 

 Moreover, even if we were to agree Williams's response was a nullity, relator has
provided no authority supporting the third prong of his argument, that a trial court has a
ministerial duty to render judgment by default immediately after calling its appearance
docket. The limited authority addressing the question uniformly holds rendition of a
judgment by default is not a ministerial act and mandamus will not issue for the purpose
of directing a trial court to render such a judgment. 

 In In re Ramirez, 994 S.W.2d 682 (Tex.App.--San Antonio 1998) (orig. proceeding),
the court recognized that the decision to render judgment by default requires the exercise
of a trial court's discretion, making the remedy of mandamus unavailable. Id. at 683. See
also Weber v. Snell, 539 S.W.2d 363, 366 (Tex.Civ.App.--Houston [1st Dist.] 1976) (orig.
proceeding); Palacios v. Rayburn, 516 S.W.2d 292, 294 (Tex.Civ.App.--Houston [1st Dist.]
1974) (orig. proceeding). 

 For these reasons, we find relator has failed to establish his entitlement to relief by
mandamus and deny his petition.


 Per Curiam



Medium Grid 1 Accent 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-00295-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



AUGUST
15, 2011

 



 

HERBERT FRANKLIN GARZA, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 100TH DISTRICT COURT OF
CHILDRESS COUNTY;

 

NO. 5192; HONORABLE STUART MESSER, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

            Presenting
ten points of error, appellant Herbert Franklin Garza appeals from his
conviction by jury of the offense of delivery of a controlled substance to a
child and the resulting sentence of sixty-five years of imprisonment in the
Institutional Division of the Texas Department of Criminal Justice.  We affirm.

 

 

 

Background

            Appellant
was indicted for delivery of a controlled substance, methamphetamine, to Q.M.,
a minor.[1]
The indictment included two enhancement paragraphs setting forth appellants
two previous felony convictions.[2]  

             Evidence showed that Q.M., then fifteen years
old, helped appellant with some work at an address in Childress, Texas.  Q.M., who is related to appellant, testified
he expected to be paid in cash for his work, but appellant instead paid him
with methamphetamine.  Q.M. told the jury
he had used methamphetamine in the past so he knew what appellant gave
him.  He said he smoked the drug with
appellant and another individual. A few hours later, Q.M. went to the home of
Dustin Dann.

            Q.M.s
mother called police after she found Q.M. coming out of Danns house.  She saw Q.M.s eyes were very low, he was
sweating profusely, and his chin was moving back and forth erratically. She
knew Q.M. was real high, so she called an ambulance and police.  Q.M. told his mother he was high because he
had been smoking ice.  Over objection,
the mother further testified
appellant later told her he gave the methamphetamine to Q.M.

            The
officer who responded to the call testified Q.M.s mother was frantic,
appeared to be scared, and concerned about her son.[3]  Asked to describe Q.M.s behavior, he said
Q.M. was sitting on a couch with his head hung, having a hard time keeping his
eyes open.  His jaw was moving back and
forth erratically.  He was very
incoherent.  Almost on the verge of
passing out.  Concluding Q.M. showed
signs of a possible overdose, the officer called emergency medical services.  Over appellants objections, the officer
testified Q.M.s mother told him Q.M. was overdosing on methamphetamine, and
testified Q.M. told him he had smoked a 30 bag of methamphetamine.[4]

            Q.M.
was transported to the hospital.  A
physician testified without objection Q.M.s mother told him Q.M. was there
because he had smoked methamphetamine. 
Q.M.s medical files were admitted into evidence.  The hospital lab results indicated Q.M.s
urine tested positive for cannabinoids and opiates.  The doctor testified that was a mistake and
should have read cannabinoids and amphetamines. Because of the positive drug
finding, a sample of the urine also was sent to a Dallas commercial laboratory.
That report confirmed Q.M.s urine was positive for methamphetamine and
marijuana.  

 

 

 

                                                                        Analysis

Sufficiency of the Evidence

            In
appellants first, second, third and fourth points of error, he contends the only evidence that
showed the substance was methamphetamine was the testimony of Q.M.  According to appellant, the testimony is
contradictory in nature and provides conflicting times and events.  Appellant asserts Q.M.s testimony is legally
and factually insufficient to prove appellant delivered methamphetamine to
Q.M.  

As
an initial consideration, we observe that appellant's appeal contends that the
evidence is both legally and factually insufficient. Appellant's brief was
prepared and filed before the Texas Court of Criminal Appeals issued its
opinion in Brooks
v. State, 323 S.W.3d 893 (Tex.Crim.App. 2010),
wherein the court held that there is no distinction between
a claim of legal, as opposed to factual, insufficiency of the evidence.
Further, the court expressly overruled Clewis
v. State, 922 S.W.2d 126
(Tex.Crim.App. 1996), and its purported application to factual sufficiency questions. Id. We will review appellant's claims of evidentiary sufficiency
under the standard of review set forth in Jackson
v. Virginia.[5]
443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979).

In
assessing the sufficiency of
the evidence, we review all the evidence, both proper and improper, in the
light most favorable to the verdict to determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson, 443 U.S. at 319; Ross
v. State, 133 S.W.3d
618, 620 (Tex.Crim.App. 2004). When reviewing all of the
evidence under the Jackson standard of review, the ultimate
question is whether the jury's finding of guilt was a rational finding. See Brooks,
323 S.W.3d at 906-07 (discussing Judge Cochran's dissent in Watson
v. State, 204 S.W.3d
404, 448-50 (Tex.Crim.App. 2006), as outlining the proper
application of a single evidentiary standard of review). Under the Jackson standard, it is the jurys role
to reconcile conflicts, contradictions, and inconsistencies in the evidence,
and to judge the credibility of witnesses. 
Brooks, 323 S.W.3d at 900. 

A person commits an offense if the person knowingly delivers a
controlled substance . . . to a . . . child." Tex. Health & Safety Code Ann. § 481.122
(West 2003).

Not
disputing that Q.M. was a child at the time of the offense, appellant argues
there is no evidence to show he delivered methamphetamine to Q.M. We
disagree.  Although Q.M.s testimony may
not have been free from inconsistencies, it was the role of the jury to
reconcile any inconsistencies, conflicts or contradictions. Brooks, 323 S.W.3d at 900. Q.M.
testified appellant gave him methamphetamine and smoked it with him.  He told his mother and the officer he had
used methamphetamine.  Appellants mother
testified appellant told her he gave the methamphetamine to Q.M.  Lab tests confirmed appellant had ingested
methamphetamine. Viewed in the proper light, we conclude the evidence allowed a
rational trier of fact to find, beyond a reasonable doubt, appellant knowingly
delivered methamphetamine to Q.M. 

 The evidence is sufficient to support the
verdict. We overrule appellants first, second, third and fourth issues.

Admission of Hearsay Statements 

            In
appellants fifth and sixth points of error, he challenges the admission of
hearsay statements.  He first complains
of the testimony by the officer of statements made to him by Q.M.s mother when
he responded to the call concerning Q.M. 
She told the officer she thought her son had overdosed on
methamphetamine.

We
review a trial judge's decision to admit or exclude evidence under an abuse of
discretion standard. Oprean
v. State, 201 S.W.3d
724, 726 (Tex.Crim.App. 2006);  Janecka
v. State, 937 S.W.2d
456, 468 (Tex.Crim.App. 1996).   Only if the trial judge's decision to admit
evidence was outside the zone of reasonable disagreement will we overrule the
trial court's ruling. Montgomery v. State, 810 S.W.3d 372, 378 (Tex.Crim.App. 1991) (op on rehg).

The State argues the mothers
statement was admissible as an excited utterance under Rule of Evidence 803(2),
and we agree.  Tex. R. Evid. 803(2).  An excited utterance is "[a] statement relating to a startling
event or condition made while the declarant was under the stress of excitement
caused by the event or condition." Tex. R. Evid. 803(2). To
determine whether a statement is an excited
utterance, trial courts should determine "whether the declarant was
still dominated by the emotions, excitement, fear, or pain of the event or
condition" when the statement is made. Factors that the trial court may
consider include the length of time between the occurrence and the
statement, the nature of the declarant, whether the statement is made in
response to a question, and whether the statement is self-serving. Apolinar v. State, 155 S.W.3d 184, 190
(Tex.Crim.App. 2005). 

The court heard the officer describe Q.M.s
mother as frantic, very distraught, scared, and concerned about her son
at the time she made the challenged statement. 
The trial court reasonably could have considered the mothers statements
related to her sons startling symptoms of drug overdose, and were made while
she was under the stress of excitement caused by her observation
of his symptoms.  They were statements
made by a mother relating to her sons condition, were not self-serving on her
part and do not appear to have been made in response to questions from the
officer.

Appellant
contends only that these statements did not qualify as excited utterances
because of the significant amount of time that passed from Q.M.s mothers
observation of her son to the statements. 
However, the passage of time, standing alone, is not determinative.  See Sadler v. State, No. 10-07-00323-CR, 2009 Tex.App. LEXIS 2962, at *
11-12 (Tex.App.Waco April 29, 2009, no pet.) (mem. op., not designated for
publication) (statement made ten or eleven hours after assault admissible as
excited utterance); Mayfield
v. State, No.
04-02-00635-CR, 2003 Tex.App. LEXIS 7660, at *5-6 (Tex.App.--San Antonio Sept.
3, 2003, pet. ref'd) (mem. op., not designated for publication)
(statement made after ten hours was admissible).  See
also Snellen
v. State, 923 S.W.2d
238, 242-43 (Tex.App.--Texarkana 1996, pet. ref'd)
(statement made after 12-13 hours admissible). 
While the exact timeline is not clear here, we see no abuse of
discretion in the trial courts admitting the statements of Q.M.s mother
concerning his use of methamphetamine, even if the statements were made several
hours after Q.M. smoked the substance. 
From the officers testimony, it seems clear Q.M. still was displaying
symptoms of his ingestion of methamphetamine at the time of the mothers
statements.

Appellant makes similar arguments
with regard to Q.M.s statement to the officer that he smoked a 30 bag of
methamphetamine.  Q.M. testified that
after smoking methamphetamine and marijuana,[6]
he felt weird in [his] arms and I left. I started walking to my house and my
mother picked me up. He described the weird feeling in his arms as freezing
up, going up.  Although he said he had
smoked methamphetamine before, he had never before experienced such
feelings.  The trial court reasonably
could have determined the symptoms of overdose were startling to him, and that
the challenged statement was made under the stress of his condition.  There was nothing self-serving about the
statement in that context and was not in response to an interrogation.  The admission of Q.M.s statement was within
the range of reasonable disagreement, and so not an abuse of discretion.  Montgomery,
810 S.W.2d at 389.

Alternatively, Q.M.s statement was
admissible under Rule 803(24), as a statement against interest. Under that
provision, such a statement is one which was at the time of its makingso far
tended to subject the declarant to civil or criminal liabilitythat a
reasonable person in declarants position would not have made the statement
unless believing it to be true.[7]
Q.M. admitted to using .5 grams of methamphetamine, therefore admitting to a
criminal offense. See Tex. Health
& Safety Code Ann. § 481.115(b)) (West 2010) (providing possession of a
controlled substance in an amount less than one gram is a state jail felony). 

We
overrule appellants fifth and sixth points of error.

Objection to Witness and Motion for
Continuance

            Appellant
contends in his seventh point of error that the trial court erred when it
overruled his objection and denied his motion for continuance in connection
with the presentation of Mark McCain, an employee of the Dallas commercial
laboratory, as a witness by the State. 
Appellant asserts the State failed to properly disclose McCain as a
witness, and by failing to do so, operated to surprise appellant and prevented
him from seeking his own expert to assist him in cross-examination.  McCains testimony was used to establish Q.M.
had methamphetamine in his urine. 

In
criminal prosecutions, "[n]otice of the State's witnesses shall be given
upon request." Martinez
v. State, 867 S.W.2d 30,
39 (Tex.Crim.App. 1993). If the trial court allows a witness
who does not appear on the State's witness list to testify, then we must
determine whether the prosecutor's actions constituted bad faith and whether
the defense could have reasonably anticipated the witness' testimony. Id.
In considering whether the State acted in bad faith, reviewing courts have
considered the following three areas of inquiry: (1) whether the defense shows
that the State intended to deceive; (2) whether the State's notice left the
defense adequate time to prepare; and (3) whether the State freely provided the
defense with information (e.g., by
promptly notifying the defense of new witnesses, by providing updated
witness lists, or by maintaining an open file
policy). Martinez
v. State, 131 S.W.3d 22,
29 (Tex. App.--San Antonio 2003, no pet.).

We
review the granting or denial of a motion for continuance under an abuse of
discretion standard. Heiselbetz
v. State, 906 S.W.2d
500, 511 (Tex.Crim.App. 1995). To show the trial court
abused its discretion in refusing to grant a motion for continuance, the
defendant must show he was prejudiced by his counsel's inadequate preparation
time. Id.; Duhamel
v. State, 717 S.W.2d 80,
83 (Tex.Crim.App. 1986).

            Here, more than a month before
trial, the State provided notice it intended to rely on documents from the
Dallas lab, LabCorp.  Nineteen days
before trial, the State supplemented its witness list to include an unnamed LabCorp technician.  Four days before trial, the State provided to
appellant the name of the technician, Mark McCain.  At trial, the court found no undue surprise
because appellant was timely notified a LabCorp technician would testify, and
offered appellant the opportunity to take time to interview McCain. Prior to
McCains testimony, appellant informed the court he had visited with McCain. Appellant
also conducted a complete cross-examination of McCain.

            There
was no showing or allegation the prosecutor acted in bad faith.  As the trial court found, appellant could
have reasonably anticipated the testimony of McCain.  The trial court offered appellant the
opportunity to take time to interview McCain before cross examining him and
appellant did so. We see no abuse of discretion in the trial courts denial of
appellants motion for continuance or its permitting McCain to testify.  We overrule appellants seventh point of
error.

Rule of Evidence 403 objections 

             In his last three points of error, appellant
argues the trial court erred in permitting the hearsay testimony of the
responding officer and Q.M.s mother over his objection that the testimony
violated Rule 403 of the Rules of Evidence. Two of the challenged statements
are the same as were addressed in appellants fifth and sixth points of
error:  the responding officers
testimony Q.M.s mother told him she thought her son had overdosed on
methamphetamine; and the officers testimony Q.M. told him he had smoked a 30
bag of methamphetamine.  The trial court
overruled both Rule 403 objections, based on the Rule 403 balancing test.

            Whether
evidence is admissible under Evidence Rule 403 is a decision within the sound
discretion of the trial court.  Montgomery, 810 S.W.2d at 386, 389.  Rule 403 allows for the
exclusion of otherwise relevant evidence when its probative value "is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence." Tex. R. Evid. 403.  Rule 403 favors the admission of relevant evidence and carries a
presumption that relevant evidence will be more probative than prejudicial. Montgomery, 810 S.W.2d at 389. A trial court must
balance (1) the inherent probative force of the proffered item of evidence
along with (2) the proponent's need for that evidence against (3) any tendency
of the evidence to suggest decision on an improper basis, (4) any tendency of
the evidence to confuse or distract the jury from the main issues, (5) any
tendency of the evidence to be given undue weight by a jury that has not been
equipped to evaluate the probative force of the evidence, and (6) the
likelihood that presentation of the evidence will consume an inordinate amount
of time or repeat evidence already admitted. Casey v. State, 215 S.W.3d 870, 879-880 (Tex.Crim.App.
2007).

            Here,
the probative value of the evidence was not substantially outweighed by the
danger of unfair prejudice.  Tex. R.
Evid. 403.  Unfair prejudice does not,
of course, mean that the evidence injures the opponent's case -- the central
point of offering evidence. Rather it refers to an undue tendency to suggest
decision on an improper basis, commonly, though not necessarily, an emotional
one. Cohn
v. State, 849 S.W.2d
817, 820 (Tex.Crim.App. 1993) (quoting GOODE, ET. AL., TEXAS
PRACTICE: TEXAS RULES OF
EVIDENCE: CIVIL AND CRIMINAL, § 403.2 (1988)). 
The challenged testimony was evidence the victim identified the
substance he received as methamphetamine. 
The evidence was strongly probative of elements of the States case, and
we see little risk it would suggest a decision on an improper basis.  The court did not abuse its discretion in its
rulings on the Rule 403 objections.  

            Appellant raises the same contention
with regard to the mothers testimony that appellant told her he did not sell
methamphetamine to Q.M. but he did smoke methamphetamine with the boy. This
statement was apparently made the Sunday before trial at Q.M.s grandmothers
house.  The statement, an admission by
appellant,[8] also had
strong probative value, both as to appellants conduct and his culpable mental
state.  Unquestionably it prejudiced
appellants defense, but the trial court was correct to find its prejudice was
not unfair. 

            We overrule appellants eighth,
ninth and tenth points of error.

            Having overruled each of appellants
contentions, we affirm the judgment of the trial court.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

 

Do
not publish.

 

 











[1]
See Tex. Health & Safety
Code Ann. § 481.122 (West 2003).

 





[2]
Appellant
plead not true to each of the two enhancement paragraphs. After hearing
punishment stage evidence, the jury found the allegations in each to be
true.  Those findings are not challenged
on appeal.





[3]
During an
earlier hearing outside the jurys presence, the officer described Q.M.s
mothers demeanor as very distraught, seemed . . . really worried about her
son, shaking, trembling, just scared.





 

[4]
The
officer testified a 30 bag was approximately .5 grams of
methamphetamine.  





[5] The
previously-applied factual sufficiency standard considers whether the evidence
supporting guilt, though legally sufficient, is so weak that the jurys verdict
seems clearly wrong and manifestly unjust, or evidence contrary to the verdict
is such that the jurys verdict is against the great weight and preponderance
of the evidence.  Grotti v. State, 273 S.W.3d 273, 283 (Tex.Crim.App. 2008); Watson v. State, 204 S.W.3d 404, 414-15
(Tex.Crim.App. 2006).  Under that
standard, the ultimate question is whether, considering all the evidence in a
neutral light, the jury was rationally justified in finding guilt beyond a
reasonable doubt.  Grotti, 273 S.W.3d at 283. 
Even had we applied such a standard of review of the evidence, we could
not sustain appellants sufficiency contentions.  From our review of the entire record, the
finding of appellants guilt was neither clearly wrong and manifestly unjust
nor against the great weight and preponderance of the evidence.





[6]
He testified he
smoked the methamphetamine and then went to Danns house and smoked marijuana
for about ten minutes.





[7]
Additionally,
in criminal cases, a statement tending to expose the declarant to criminal
liability is not admissible unless corroborating circumstances clearly indicate
the trustworthiness of the statement. 
Tex. R. Evid. 803(24). The medical evidence provided corroboration
indicating the trustworthiness of Q.M.s statement to the officer.





[8]
See Tex. R. Evid. 801(e)(2) (admission by party opponent).