NO. 07-09-00295-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 15, 2011

HERBERT FRANKLIN GARZA, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 100TH DISTRICT COURT OF CHILDRESS COUNTY;

NO. 5192; HONORABLE STUART MESSER, JUDGE

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Presenting ten points of error, appellant Herbert Franklin Garza appeals from his conviction by jury of the offense of delivery of a controlled substance to a child and the resulting sentence of sixty-five years of imprisonment in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

Background

Appellant was indicted for delivery of a controlled substance, methamphetamine, to Q.M., a minor.[1] The indictment included two enhancement paragraphs setting forth appellant's two previous felony convictions.[2]

Evidence showed that Q.M., then fifteen years old, helped appellant with some work at an address in Childress, Texas. Q.M., who is related to appellant, testified he expected to be paid in cash for his work, but appellant instead paid him with methamphetamine. Q.M. told the jury he had used methamphetamine in the past so he knew what appellant gave him. He said he smoked the drug with appellant and another individual. A few hours later, Q.M. went to the home of Dustin Dann.

Q.M.'s mother called police after she found Q.M. coming out of Dann's house. She saw Q.M.'s eyes were very "low," he was sweating profusely, and his chin was moving back and forth erratically. She knew Q.M. was "real" high, so she called an ambulance and police. Q.M. told his mother he was high because he had been smoking "ice." Over objection, the mother further testified appellant later told her he gave the methamphetamine to Q.M.

The officer who responded to the call testified Q.M.'s mother was "frantic, appeared to be scared, and concerned about her son."[3] Asked to describe Q.M.'s

---

[1] *See* Tex. Health & Safety Code Ann. § 481.122 (West 2003).

[2] Appellant plead "not true" to each of the two enhancement paragraphs. After hearing punishment stage evidence, the jury found the allegations in each to be true. Those findings are not challenged on appeal.

behavior, he said Q.M. "was sitting on a couch with his head hung, having a hard time keeping his eyes open. His jaw was moving back and forth erratically. He was very incoherent. Almost on the verge of passing out." Concluding Q.M. showed signs of a possible overdose, the officer called emergency medical services. Over appellant's objections, the officer testified Q.M.'s mother told him Q.M. was "overdosing" on methamphetamine, and testified Q.M. told him he had smoked a "30 bag" of methamphetamine.[4]

Q.M. was transported to the hospital. A physician testified without objection Q.M.'s mother told him Q.M. was there because he had smoked methamphetamine. Q.M.'s medical files were admitted into evidence. The hospital lab results indicated Q.M.'s urine tested positive for "cannabinoids and opiates." The doctor testified that was a mistake and should have read "cannabinoids and amphetamines." Because of the positive drug finding, a sample of the urine also was sent to a Dallas commercial laboratory. That report confirmed Q.M.'s urine was positive for methamphetamine and marijuana.

---

[3] During an earlier hearing outside the jury's presence, the officer described Q.M.'s mother's demeanor as "very distraught," "seemed . . . really worried about her son," "shaking, trembling, just scared."

[4] The officer testified a "30 bag" was approximately .5 grams of methamphetamine.

Analysis

*Sufficiency of the Evidence*

In appellant's first, second, third and fourth points of error, he contends the only evidence that showed the substance was methamphetamine was the testimony of Q.M. According to appellant, the testimony is contradictory in nature and provides conflicting times and events. Appellant asserts Q.M.'s testimony is legally and factually insufficient to prove appellant delivered methamphetamine to Q.M.

As an initial consideration, we observe that appellant's appeal contends that the evidence is both legally and factually insufficient. Appellant's brief was prepared and filed before the Texas Court of Criminal Appeals issued its opinion in *Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App. 2010), wherein the court held that there is no distinction between a claim of legal, as opposed to factual, insufficiency of the evidence. Further, the court expressly overruled *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App. 1996), and its purported application to factual sufficiency questions. *Id.* We will review appellant's claims of evidentiary sufficiency under the standard of review set forth in *Jackson v. Virginia*.[5] 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

---

[5] The previously-applied factual sufficiency standard considers whether the evidence supporting guilt, though legally sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Grotti v. State,* 273 S.W.3d 273, 283 (Tex.Crim.App. 2008); *Watson v. State,* 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006). Under that standard, the ultimate question is whether, considering all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Grotti,* 273 S.W.3d at 283. Even had we applied such a standard of review of the evidence, we could not sustain appellant's sufficiency contentions. From our review of the entire record, the finding of appellant's

In assessing the sufficiency of the evidence, we review all the evidence, both proper and improper, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Ross v. State*, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See Brooks,* 323 S.W.3d at 906-07 (discussing Judge Cochran's dissent in *Watson v. State*, 204 S.W.3d 404, 448-50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review). Under the *Jackson* standard, it is the jury's role to reconcile conflicts, contradictions, and inconsistencies in the evidence, and to judge the credibility of witnesses. *Brooks,* 323 S.W.3d at 900.

A person commits an offense if the person knowingly delivers a controlled substance . . . to a . . . child." Tex. Health & Safety Code Ann. § 481.122 (West 2003).

Not disputing that Q.M. was a child at the time of the offense, appellant argues there is no evidence to show he delivered methamphetamine to Q.M. We disagree. Although Q.M.'s testimony may not have been free from inconsistencies, it was the role of the jury to reconcile any inconsistencies, conflicts or contradictions. *Brooks,* 323 S.W.3d at 900. Q.M. testified appellant gave him methamphetamine and smoked it with him. He told his mother and the officer he had used methamphetamine. Appellant's mother testified appellant told her he gave the methamphetamine to Q.M. Lab tests confirmed appellant had ingested methamphetamine. Viewed in the proper light, we

---

guilt was neither clearly wrong and manifestly unjust nor against the great weight and preponderance of the evidence.

5

conclude the evidence allowed a rational trier of fact to find, beyond a reasonable doubt, appellant knowingly delivered methamphetamine to Q.M.

The evidence is sufficient to support the verdict. We overrule appellant's first, second, third and fourth issues.

*Admission of Hearsay Statements*

In appellant's fifth and sixth points of error, he challenges the admission of hearsay statements.  He first complains of the testimony by the officer of statements made to him by Q.M.'s mother when he responded to the call concerning Q.M.  She told the officer she thought her son had overdosed on methamphetamine.

We review a trial judge's decision to admit or exclude evidence under an abuse of discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex.Crim.App. 2006); *Janecka v. State*, 937 S.W.2d 456, 468 (Tex.Crim.App. 1996).   Only if the trial judge's decision to admit evidence was outside the zone of reasonable disagreement will we overrule the trial court's ruling. *Montgomery v. State,* 810 S.W.3d 372, 378 (Tex.Crim.App. 1991) (op on reh'g).

The State argues the mother's statement was admissible as an excited utterance under Rule of Evidence 803(2), and we agree.  Tex. R. Evid. 803(2).  An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex. R. Evid. 803(2). To determine whether a statement is an excited utterance, trial courts should determine "whether the declarant was still dominated by the emotions,

6

excitement, fear, or pain of the event or condition" when the statement is made. Factors that the trial court may consider include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving. *Apolinar v. State,* 155 S.W.3d 184, 190 (Tex.Crim.App. 2005).

The court heard the officer describe Q.M.'s mother as "frantic," "very distraught," "scared," and "concerned about her son" at the time she made the challenged statement. The trial court reasonably could have considered the mother's statements related to her son's startling symptoms of drug overdose, and were made while she was under the stress of excitement caused by her observation of his symptoms. They were statements made by a mother relating to her son's condition, were not self-serving on her part and do not appear to have been made in response to questions from the officer.

Appellant contends only that these statements did not qualify as excited utterances because of the "significant" amount of time that passed from Q.M.'s mother's observation of her son to the statements. However, the passage of time, standing alone, is not determinative. *See Sadler v. State,* No. 10-07-00323-CR, 2009 Tex.App. LEXIS 2962, at * 11-12 (Tex.App.—Waco April 29, 2009, no pet.) (mem. op., not designated for publication) (statement made ten or eleven hours after assault admissible as excited utterance); *Mayfield v. State*, No. 04-02-00635-CR, 2003 Tex.App. LEXIS 7660, at *5-6 (Tex.App.--San Antonio Sept. 3, 2003, pet. ref'd) (mem. op., not designated for publication) (statement made after ten hours was admissible).

7

*See also Snellen v. State*, 923 S.W.2d 238, 242-43 (Tex.App.--Texarkana 1996, pet. ref'd) (statement made after 12-13 hours admissible). While the exact timeline is not clear here, we see no abuse of discretion in the trial court's admitting the statements of Q.M.'s mother concerning his use of methamphetamine, even if the statements were made several hours after Q.M. smoked the substance. From the officer's testimony, it seems clear Q.M. still was displaying symptoms of his ingestion of methamphetamine at the time of the mother's statements.

Appellant makes similar arguments with regard to Q.M.'s statement to the officer that he smoked a "30 bag" of methamphetamine. Q.M. testified that after smoking methamphetamine and marijuana,[6] he "felt weird in [his] arms and I left. I started walking to my house and my mother picked me up." He described the "weird" feeling in his arms as "freezing up, going up." Although he said he had smoked methamphetamine before, he had never before experienced such feelings. The trial court reasonably could have determined the symptoms of overdose were startling to him, and that the challenged statement was made under the stress of his condition. There was nothing self-serving about the statement in that context and was not in response to an interrogation. The admission of Q.M.'s statement was within the range of reasonable disagreement, and so not an abuse of discretion. *Montgomery,* 810 S.W.2d at 389.

Alternatively, Q.M.'s statement was admissible under Rule 803(24), as a statement against interest. Under that provision, such a statement is one which was "at

---

[6] He testified he smoked the methamphetamine and then went to Dann's house and smoked marijuana for about ten minutes.

the time of its making…so far tended to subject the declarant to civil or criminal liability…that a reasonable person in declarant's position would not have made the statement unless believing it to be true."[7] Q.M. admitted to using .5 grams of methamphetamine, therefore admitting to a criminal offense. *See* Tex. Health & Safety Code Ann. § 481.115(b)) (West 2010) (providing possession of a controlled substance in an amount less than one gram is a state jail felony).

We overrule appellant's fifth and sixth points of error.

*Objection to Witness and Motion for Continuance*

Appellant contends in his seventh point of error that the trial court erred when it overruled his objection and denied his motion for continuance in connection with the presentation of Mark McCain, an employee of the Dallas commercial laboratory, as a witness by the State. Appellant asserts the State failed to properly disclose McCain as a witness, and by failing to do so, operated to surprise appellant and prevented him from seeking his own expert to assist him in cross-examination. McCain's testimony was used to establish Q.M. had methamphetamine in his urine.

In criminal prosecutions, "[n]otice of the State's witnesses shall be given upon request." *Martinez v. State*, 867 S.W.2d 30, 39 (Tex.Crim.App. 1993). If the trial court allows a witness who does not appear on the State's witness list to testify, then we must determine whether the prosecutor's actions constituted bad faith and whether the

_____

[7] Additionally, in criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. Tex. R. Evid. 803(24). The medical evidence provided corroboration indicating the trustworthiness of Q.M.'s statement to the officer.

defense could have reasonably anticipated the witness' testimony. *Id.* In considering whether the State acted in bad faith, reviewing courts have considered the following three areas of inquiry: (1) whether the defense shows that the State intended to deceive; (2) whether the State's notice left the defense adequate time to prepare; and (3) whether the State freely provided the defense with information (*e.g.*, by promptly notifying the defense of new witnesses, by providing updated witness lists, or by maintaining an open file policy). *Martinez v. State*, 131 S.W.3d 22, 29 (Tex. App.--San Antonio 2003, no pet.).

We review the granting or denial of a motion for continuance under an abuse of discretion standard. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex.Crim.App. 1995). To show the trial court abused its discretion in refusing to grant a motion for continuance, the defendant must show he was prejudiced by his counsel's inadequate preparation time. *Id.; Duhamel v. State*, 717 S.W.2d 80, 83 (Tex.Crim.App. 1986).

Here, more than a month before trial, the State provided notice it intended to rely on documents from the Dallas lab, LabCorp. Nineteen days before trial, the State supplemented its witness list to include an unnamed LabCorp technician. Four days before trial, the State provided to appellant the name of the technician, Mark McCain. At trial, the court found no undue surprise because appellant was timely notified a LabCorp technician would testify, and offered appellant the opportunity to take time to interview McCain. Prior to McCain's testimony, appellant informed the court he had visited with McCain. Appellant also conducted a complete cross-examination of McCain.

10

There was no showing or allegation the prosecutor acted in bad faith. As the trial court found, appellant could have reasonably anticipated the testimony of McCain. The trial court offered appellant the opportunity to take time to interview McCain before cross examining him and appellant did so. We see no abuse of discretion in the trial court's denial of appellant's motion for continuance or its permitting McCain to testify. We overrule appellant's seventh point of error.

*Rule of Evidence 403 objections*

In his last three points of error, appellant argues the trial court erred in permitting the hearsay testimony of the responding officer and Q.M.'s mother over his objection that the testimony violated Rule 403 of the Rules of Evidence. Two of the challenged statements are the same as were addressed in appellant's fifth and sixth points of error: the responding officer's testimony Q.M.'s mother told him "she thought her son had overdosed on methamphetamine"; and the officer's testimony Q.M. told him "he had smoked a 30 bag of methamphetamine." The trial court overruled both Rule 403 objections, based on the Rule 403 balancing test.

Whether evidence is admissible under Evidence Rule 403 is a decision within the sound discretion of the trial court. *Montgomery,* 810 S.W.2d at 386, 389. Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than

11

prejudicial. *Montgomery*, 810 S.W.2d at 389. A trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Casey v. State,* 215 S.W.3d 870, 879-880 (Tex.Crim.App. 2007).

Here, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. "Unfair prejudice does not, of course, mean that the evidence injures the opponent's case -- the central point of offering evidence. Rather it refers to an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Cohn v. State*, 849 S.W.2d 817, 820 (Tex.Crim.App. 1993) (quoting GOODE, ET. AL., TEXAS PRACTICE: TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL, § 403.2 (1988)). The challenged testimony was evidence the victim identified the substance he received as methamphetamine. The evidence was strongly probative of elements of the State's case, and we see little risk it would suggest a decision on an improper basis. The court did not abuse its discretion in its rulings on the Rule 403 objections.

Appellant raises the same contention with regard to the mother's testimony that appellant told her he did not sell methamphetamine to Q.M. but he did smoke

12

methamphetamine with the boy. This statement was apparently made the Sunday before trial at Q.M.'s grandmother's house. The statement, an admission by appellant,[8] also had strong probative value, both as to appellant's conduct and his culpable mental state. Unquestionably it prejudiced appellant's defense, but the trial court was correct to find its prejudice was not unfair.

We overrule appellant's eighth, ninth and tenth points of error.

Having overruled each of appellant's contentions, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.

---

[8] *See* Tex. R. Evid. 801(e)(2) (admission by party opponent).